[Crim. No. 3081. Third Dist. Feb. 28, 1961.]

THE PEOPLE, Respondent, v. JIMMIE GARRISON, Appellant.

A. Richard Backus, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris Maier and C. Michael Gianola, Deputy Attorneys General, for Respondent.

WARNE, J. pro tem.*—The defendant was charged by information of five counts of forgery in violation of section 470 of the Penal Code. A jury found him guilty on all counts. He has appealed from the judgment.

The record shows that between the hours of 5 p. m. and 11 p. m. on October 5, 1959, the office of the Starwin Lumber Company located in Arcata, California, was burglarized. The company's check protector and two packages of checks printed by the Bank of America National Trust and Savings Association, Arcata Branch, with the legend "Francis Hurd, c/o Starwin Lumber Company, Blue Lake, California," on each check, were stolen from this office. Francis Hurd, who was in the trucking business and working from the Starwin

---

*Assigned by Chairman of Judicial Council.

Lumber Company at this time, had previously opened a checking account at this bank. In compliance with Hurd's request the bank had mailed these checks to the Starwin Lumber Company's office in order that he could pick them up there.

In the forenoon of October 9, 1959, the appellant met one Rex Stevens in a café in Eureka. Appellant told Stevens he had blank checks which could be negotiated. Stevens, who was using the name of Paul Dullanty, a deceased person, had in his possession the deceased's "identification." He informed appellant that they could use the name as the payee on these checks. At the time they met, appellant was using the name of Bill Stewart. That evening they drove to Crescent City in appellant's automobile. Stevens agreed to purchase the necessary oil and gas for appellant's automobile in which to make the trip and return to Eureka. Once in Crescent City, Stevens cashed five of the forged checks in five different bars. Appellant would remove from between the pages of a magazine a stolen check which had been filled in as to the amount prior thereto by the use of a check protector. He would then, in the presence of Stevens, write in the name of Francis Hurd as drawer, and Paul Dullanty as payee and then hand it to Stevens. The checks were endorsed by Stevens with the name "Paul Dullanty." Three of the checks were in the amount of $46.73, and two were for $46.93. Stevens would then take a check into a bar, have it cashed, return to appellant's car and divide the proceeds with appellant. Stevens testified that he didn't know how appellant obtained these checks. After Stevens cashed the five checks, he and appellant went to a restaurant in Crescent City to eat. After they left the restaurant and were about to enter appellant's car, they were arrested, put into a police car, and driven to the various bars where the checks had been cashed. Stevens was then taken into the bars by one of the officers and was identified by the bartender as the man who cashed one of the checks there. While Stevens was thus being identified appellant remained in the police car with the other officer. Following that procedure, Stevens and appellant were taken to the jail where Stevens was booked on a charge of suspicion of forgery, but appellant was booked only on a "vag detainer."

On the night of appellant's arrest his automobile was impounded by the police. Thereafter, the vehicle was searched and various items were discovered implicating appellant in the forgeries.

Appellant contends that the items taken from his

automobile were the products of an unlawful search and seizure and should not have been introduced as evidence against him. Respondent claims that appellant may not for the first time on appeal claim error since no objection or motion to strike was properly made during the trial. It is clear that appellant did not object to the admission in evidence of the exhibits in question at the time they were admitted. However, on November 18, 1959, the date originally set for the trial of the case, appellant attempted to make an oral motion to strike certain exhibits which had been produced at his preliminary hearing in the justice court on the ground that they were obtained by an illegal search and seizure. The trial court at that time refused to entertain the motion since the matter was set for trial. Thereafter, on the morning of December 7, 1959, while a jury was being selected to try the case, and immediately following appellant's refusal to let the public defender act as his attorney and his determination to defend himself, the record shows the following:

"MR. GARRISON: Then, Your Honor, in my own behalf, at this time I would like to make a motion that People's Exhibit 2, People's Exhibit 3, People's Exhibit 4 and anything, with the exception of People's Exhibit 1, under Section 1527, 1537 of the Penal Code be stricken from the record . . . . I was arrested and booked on a vag detainer. They went down the next day and took a crow bar and pried open my car, with which they obtained some articles which they wished to hold in evidence and under Section 1527, 1537 of the Penal Code, it was obtained under—through unlawful search and seizure. THE COURT: For your information, Mr. Garrison, there have been some very recent cases which go just to the contrary and which hold that in a case of this kind there has been no illegal search and seizure. So, the motion is denied. MR. GARRISON: There was no illegal search and seizure, Your Honor, may I—— THE COURT: (interposing) No, the motion is denied. MR. GARRISON: May I read this little article to the Court. '——It has been extended to cover not only a man's ——' and this is recent —— '——a man's home but his hotel room, the basement he rents to sell dope or lottery tickets, his house of prostitution, his barn full of stolen goods, the shack in which he makes illicit whiskey, even the wood lot on the back forty of his hideaway farm.' THE COURT: Unfortunately those are decisions not of this State, Mr. Garrison. The decisions in this State are to the contrary. The motion is denied. MR. GARRISON: Your Honor, the Constitution—— THE COURT:

(interposing) I have ruled. Just a moment. I have ruled on the motion. When I make a ruling on a motion, I don't want you to argue with my rulings. I will hear you, as I have heard you, prior to the time that I rule but after I rule you are bound by my rulings. I am not going to have you arguing with the Court's rulings. MR. GARRISON: Then, you wish to go on record that you are ruling—— THE COURT: (interposing) The Court Reporter is making a record of this. There will be a complete record of it. MR. GARRISON: You wish to go on record as refusing—— THE COURT: (interposing) Sit down, Mr. Garrison. I have ruled. Now, I have ruled. MR. GARRISON: Fair enough. THE COURT: When I have ruled I don't want you arguing with my rulings.''

Thus it is apparent that the trial court gave appellant no further opportunity to set forth in detail the ultimate facts upon which he relied in support of his motion. We feel that this was an abuse of discretion upon the part of the trial court.

Since the appellant is not a lawyer, his objection that the exhibits in question were obtained illegally and without his consent is a sufficient one, although he did not properly object at the trial. (*People* v. *Chapman*, 151 Cal.App.2d 59, 61 [311 P.2d 190].)

 Turning now to appellant's contention, the record shows that appellant's automobile, which had been impounded, was searched by the police without a warrant four days after the arrest. A cellophane bag containing five checkbooks was found under the hood of appellant's car. Other checks were found in the back seat of the automobile. A check protector was found in the trunk. These items were introduced into evidence at the trial with the exception of the check protector. However, a thumb print taken from the check protector was admitted into evidence. The record clearly shows that appellant did not consent to the search by the police; but that the police conducted the search on authority from the chief of police and forcibly opened the car's trunk with a crowbar. Appellant argues that the search was in violation of his constitutional rights against unlawful search and seizure. (Cal. Const., art. I, § 19; U.S. Const., Amendment 4.) If the search was unconstitutional, the evidence obtained through the search would be inadmissible in the trial court. (*People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].) Testimony relating to an unlawful search is also inadmissible (*People* v. *Berger*, 44 Cal.2d 459 [282 P.2d 509]; *People* v.

*Dixon,* 46 Cal.2d 456 [296 P.2d 557]), as is also testimony relating to the fruits of an unlawful search.

A limited right to search without a search warrant exists where the search is incidental to a lawful arrest. To be "incidental to" an arrest, the search must be contemporaneous therewith. (*People* v. *Dominguez,* 144 Cal.App.2d 63 [300 P.2d 194].) While it has been held that the search may precede the arrest (*People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531], *Gascon* v. *Superior Court,* 169 Cal.App.2d 356 [337 P.2d 201]), or may follow the arrest by 45 minutes and still be reasonably "contemporaneous" with the arrest (*People* v. *Dominguez, supra*), we do not believe that this requisite is fulfilled under the facts of the instant case. *State* v. *McCollum,* 17 Wn.2d 85 [136 P.2d 165], supports this position. There the search of defendant's house was conducted on the day following the arrest. Although three of the justices of the Supreme Court of the State of Washington felt that the admission of evidence was nonprejudicial, they and two other justices were of the opinion that the search was not incidental to the arrest. In *People* v. *Gorg,* 45 Cal.2d 776, 781 [291 P.2d 469], the police conducted a search 48 hours after the arrest had taken place and the court held that such a search could not be justified as incidental to the arrest. (See also *Agnello* v. *United States,* 269 U.S. 20, 30-31 [46 S.Ct. 4, 70 L.Ed. 145, 148, 51 A.L.R. 409].) Furthermore, in the Gorg case, *supra,* it was pointed out that inasmuch as the defendant therein had been arrested for shoplifting and the subsequent search was not made to recover other stolen articles, the search had no reasonable relation to the arrest. The same reasoning is applicable to this case inasmuch as the appellant was arrested and booked upon a vagrancy charge and the subsequent search was not related to the arrest.

The respondent correctly points out that it is sufficient if the search of a vehicle under all of the facts of a case was reasonable, even if not incidental to a lawful arrest. (*People* v. *Wright,* 153 Cal.App.2d 35, 39-40 [313 P.2d 868].) In *People* v. *Brajevich,* 174 Cal.App.2d 438, 444 [344 P.2d 815], the court said:

" 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' (*Brinegar* v. *United States,* 338 U.S. 160, 170 [10-11] [69 S.Ct. 1302, 93 L.Ed. 1879].)

"Our own California Supreme Court has recognized and adopted the same policy for the State of California, and has expressed it as follows:

"'Since an automobile may readily be moved from place to place, its search without a warrant is not unreasonable if the officer has reasonable cause to believe it is carrying contraband.' (*People* v. *Gale*, 46 Cal.2d 253, 255 [1] [294 P.2d 13].) *People* v. *Martin*, 46 Cal.2d 106, 108 [2] [293 P.2d 52] recognizes the same policy."

This view is based upon *Carroll* v. *United States*, 267 U.S. 132, 153 [45 S.Ct. 280, 69 L.Ed. 543, 551, 39 A.L.R. 790]. *United States* v. *Rabinowitz*, 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653], in no way affects the reasoning in the Carroll case.

Inasmuch as the search in the instant case was not incident to a lawful arrest, the question remains whether the rule allowing reasonable searches of vehicles under the Carroll decision applies. We think it does not. The rule is based upon the capacity of a vehicle to depart from the jurisdiction. In the present case the vehicle was impounded and was no more movable than a dwelling house. A search warrant should have been procured.

The attorney general contends that the search was lawful as incidental to the arrest of Stevens, the alleged accomplice of appellant. Much of what has been discussed previously is equally applicable to this contention, that is, the search four days after Stevens' arrest was not incidental to *his* arrest and as the car was impounded there is no reason to treat the automobile as a "vehicle" under the Carroll rule.

The respondent also contends that it is not a violation of the appellant's right against illegal seizure to impound his automobile incidental to a lawful arrest where the appellant was in control of the vehicle. (*People* v. *Simpson*, 170 Cal. App.2d 524, 529-530 [339 P.2d 156].) The attorney general argues that the automobile was in the joint control of the appellant and Stevens at the time of their arrests. The result contended for is that, since the automobile was in the lawful possession of the police, the evidence contained within the automobile was also in their possession, and any later search of the automobile was necessarily lawful. Respondent relies upon *People* v. *Nebbitt*, 183 Cal.App.2d 452, 460-461 [7 Cal. Rptr. 8], and *People* v. *Ortiz*, 147 Cal.App.2d 248, 251 [305 P.2d 145], in support of this contention. It is doubtful whether the theory expounded in those cases, i.e., that the

impounding gave the officer lawful possession of the vehicle and hence that the later search was therefore lawful is applicable to the facts of this case. In both the Ortiz and Nebbitt cases the later search was for the purpose of making an inventory of the contents of the automobile. This was held to be a reasonable search and any evidence incidentally discovered was admissible. In the present case the subsequent search was for a totally different purpose. However, assuming that the rationale of those decisions would properly be applicable to the present situation despite the distinguishable fact situation, that rationale would not apply if the impounding of the vehicle was itself unlawful. An automobile not lawfully in the possession of the police cannot justify a subsequent search by reason of the existence of possession by the police.

The attorney general's contention that the automobile was in joint control of Stevens and the appellant is unsound. The evidence relied upon is that Stevens stated to the arresting officers that he had met the appellant in a bar in Eureka and bought appellant's gas and oil to bring him to Crescent City. We cannot see how this fact could reasonably lead the arresting officers to believe that Stevens was exercising joint control over the automobile at that time. The impounding of the car cannot be justified as an incident to the lawful arrest of Stevens as Stevens had no real control over the automobile.

Appellant clearly had control of the automobile and at the time of the arrest the police officers could reasonably have believed this to be a fact, inasmuch as appellant stated at that time that he owned the vehicle. However, the impounding of the automobile cannot be justified as incidental to appellant's arrest, as appellant's arrest was unlawful.

Appellant, after questioning by the police, was arrested without a warrant for being a vagrant. Section 647 of the Penal Code defines "vagrant." The crime is a misdemeanor, and not a felony. It follows that in order to make a lawful arrest without a warrant for being a vagrant, the arresting officer must have reasonable cause to believe that the person arrested had committed the crime in his presence. (Pen. Code, § 836, subd. 1.)

The arresting officers had received complaints relating to the uttering of bad checks by a single man (Stevens). Preceding the arrest, the appellant and Stevens had been eating dinner in a restaurant. The meal was paid for and the two left and entered appellant's automobile. The police took both men to the various bars where checks had been cashed. Only

Stevens was taken inside for identification. The automobile was "lightly" searched at that time and nothing was discovered. A search of appellant's person disclosed no evidence. Appellant and Stevens were examined for cuts on their bodies (suspected by police as an incident of the burglary of the Starwin Lumber Company), with negative results. This initial search disclosed that appellant had only 56 cents with him at the time.

Whether an offense has been committed in an officer's presence is determined by whether the officer could testify to actual knowledge to every element of the offense. (*People* v. *Craig,* 152 Cal. 42, 45 [91 P. 997].) The question of reasonable and probable cause must be measured by the facts presented to the officer at the time he is required to act. (*People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73] ; *People* v. *Hupp,* 61 Cal.App.2d 447 [143 P.2d 84].) On the basis of the facts outlined above, the initial questioning and search of the appellant might well have been reasonable under the circumstances. However, nothing was found implicating appellant in the forgeries, nor was there anything to suggest that appellant was a vagrant. There was nothing to show appellant was idle. Appellant was not loitering nor was he known to the arresting officers to be a criminal. There was nothing to show that appellant was roaming "from place to place without any lawful business." The classification of "associate of known thieves" was deleted from section 647 of the Penal Code in 1955. Appellant's arrest was unlawful and therefore appellant's automobile was illegally impounded. (See *People* v. *Wilson,* 145 Cal.App.2d 1 [301 P.2d 974].)

We conclude that the search four days subsequent to appellant's arrest was illegal. Under the rule stated in the Cahan case, *supra,* evidence obtained by such a search is inadmissible. The checks discovered in appellant's automobile and the thumbprint taken from the check protector were highly relevant evidence probative of appellant's guilt. The admission of this evidence was prejudicial error.

The notice of appeal recites that an appeal is also taken from the order denying motion for a new trial. Our inspection of the record does not reveal that any such proceedings were taken or such order made.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.