[Crim. No. 4233. First Dist., Div. One. May 24, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOE NATHAN COOPER, Defendant and Appellant.

Joe Nathan Cooper, in pro. per., and Michael Traynor, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Charles W. Rumph, Deputy Attorneys General, for Plaintiff and Respondent.

SULLIVAN, P. J.—Defendant was charged in an indictment with selling heroin (Health & Saf. Code, § 11501) and in a second count of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245.) An amended indictment filed during the trial charged the above offenses and in addition charged two previous convictions of felonies. Defendant pleaded not guilty to each count of the indictment and amended indictment and admitted the two previous convictions. The court sitting without a jury found defendant guilty of violation of Health and Safety Code section 11501 as charged in count one of the amended indictment and of the lesser and included offense of simple assault as charged in count two of the amended indictment. Defendant appeals from the judgment of conviction.

On December 21, 1961, at about 5:30 or 6 a.m., one Frank Green was arrested in his hotel room in Richmond by state narcotic agents and a Richmond police officer for selling heroin. The officers then took Green to the Richmond Police Department where he was interrogated. He agreed to act as an informer. Green's person and clothing were thoroughly searched at the time of his arrest and again at the police department at about noon of the same day.

After the second search was completed, Green was taken by state narcotic Agent Armenta and federal narcotic Agent Lee to a public telephone booth in downtown Richmond. He had been furnished with $20 in marked money. Green and Agent Armenta entered the phone booth together and the latter placed a twin phone as a listening apparatus on the receiving end of the telephone. Green thereupon dialed a number identified as that of defendant's residence. A woman answered and Green asked for defendant, "Joe." When "Joe" answered, Green said, "How about a deuce?" "Joe" said "Yes." Green suggested that they meet at "Newell's" and then the two agreed to meet there right away. Armenta

testified that he recognized the voice of "Joe" as being that of defendant. He also testified that in the narcotic traffic the word "deuce" is used in referring to bindles or capsules of heroin. The parties are in agreement that the telephone call took place between 12:30 and 1 p.m. on December 21.

On this date defendant lived with his aunt Mrs. Leona Gulley at 536 South 20th Street in Richmond. Louis Stumpf, a Richmond police officer assigned to the vice detail and one of the officers who had arrested Green early that morning, together with state narcotic Agent Yates, had defendant's residence under surveillance during the time the above telephone conversation was taking place. Stumpf and Yates were in a car on 19th Street just north of Cutting Boulevard, and could see defendant's house on 20th Street across the intervening corners which had no structures on them. Stumpf had observed defendant prior to this date and testified that he knew defendant when he saw him. At about 12:50 p.m., the officer "saw a person that fit the description" of defendant leave defendant's house, walk to a blue 1957 Oldsmobile parked in front, open the trunk of the car, stand at the rear of the car for two or three minutes, then enter the car and drive north to Cutting, east to 22d Street and then south on 22d Street.

Newell's Market was located on the corner of 23d and Cutting. Adjacent to it on the west side, extending westerly along Cutting for the rest of the block to 22d Street, was a large parking lot. After Green completed the telephone call, Agents Armenta and Lee took him to the vicinity of the market and dropped him off at 23d and Virginia Streets, just one block north of the market. Armenta left the vehicle a short distance away. Both men then proceeded to the front of Newell's Market, Green approaching it on the west side of 23d Street and Armenta on the east side, eventually crossing both Cutting and 23d Street to the front of the market, which was located on the southwest corner. All during this time Armenta had Green in plain sight and observed that the latter contacted no persons.

Armenta then saw Green walk into the parking lot, saw defendant alone in a 1957 blue Oldsmobile drive into the parking lot from 22d and Cutting, lost sight of Green for about two or three minutes, and then saw him emerge from the lot and return to the vicinity of 23d and Virginia Streets where Agent Lee was waiting. According to Armenta, Green was in the parking lot about five minutes altogether and after defendant's car entered the lot it was "Just a couple of minutes, one or two," before Green walked out.

While Armenta was standing in front of the market he observed state narcotic Agent Howard Groom, who, along with Lieutenant Sullivan of the Richmond Police Department, had taken a position in a service station on the northeast corner of 23d and Cutting, diagonally across from the market. Armenta, from his position in front of the Market, saw Groom leave the service station, cross 23d Street, and proceed to a vantage point on the north side of Cutting opposite Armenta, where Groom could see the parking area.

Groom and Sullivan had observed Green and Armenta making the telephone call and then in a separate car had accompanied them to Newell's Market. They parked in the service station and watched both Armenta and Green approach the market. Groom testified that he then left the service station, crossed 23d Street and stood on the porch of a house fronting on 22d Street, from which position he had a clear view of the entire front of the market and of the easterly half of the parking lot. He stated that he could see Agent Armenta and Green at all times and he continued to watch Green. After a short time Green walked out into the parking lot from a position close to the wall of the building. At this point, Groom left the porch of the house and took another position alongside the house where he had a view of the entire parking lot. He then saw Green "go up to the Oldsmobile, which I recognized as the car that Joe Cooper usually drove, and talk to a man in that car who appeared to me to be Joe Cooper." Green stood by the driver's side of the car for a minute or so and then walked out of the lot and up 23d Street to Virginia. Groom kept him in sight all the time until he saw Green coming into Agent Lee's view.

Lieutenant Sullivan generally confirmed the activities of Armenta, Green and Groom at Newell's Market. Sullivan, who was parked in the service station, received a radio call from Agent Yates who had seen defendant leave his house. After receiving the message, Sullivan saw the 1957 Oldsmobile pull into the parking lot, saw Green walk over to it and sit in the front seat with the driver for a few minutes and then saw Green walk back toward 23d Street. He testified that there was only one person in the car when it entered the lot and that "It appeared to me to be Joe Cooper." Sullivan had seen Cooper in a vehicle about two weeks previously. During all of the time Sullivan had Green under surveillance he did not see him contact or communicate with anyone other than defendant.

When Green returned to Agent Lee's car, he handed Lee,

in Armenta's presence, a small package and the group thereupon returned to the Richmond Police Department. The package consisted of two white paper bindles of heroin wrapped in brown wrapping paper apparently from a grocery sack. Groom and Sullivan also returned there. A field test was made of the contents of the package, indicating that the substance was possibly an opium derivative. After the test was made the officers attempted to locate defendant's car.

Eventually Agent Groom, federal Agents Yates and Lee and Richmond Police Officers Stumpf and Billingsley participated in placing defendant under arrest. The blue Oldsmobile was finally located at 7th and MacDonald in Richmond at 2:15 p.m. on December 21 and kept under surveillance until about 3:45 p.m. when defendant walked toward the car with a woman and two children. As defendant started to unlock the car door Groom and Yates closed in on him and placed him under arrest. Groom grabbed defendant's right wrist and defendant motioned and said, "It's there in the car over the sun visor." When asked what was there, defendant bent down and said, "The marijuana cigarettes. . . . But I didn't put them there, someone else put them there."

At this point defendant put his left hand into his right shirt pocket, removed an object wrapped in brown paper and started to put it in his mouth. Both Groom and Yates grabbed defendant's left arm: Groom grabbed the hand, whereupon both hand and package went into defendant's mouth and were stubbornly chewed by defendant. Groom grabbed defendant by the nose, shouted in pain to Cooper to let go of his finger, and after a scuffle, managed to pull his finger out of defendant's mouth. An attempt was made to get defendant to open his mouth while he was still chewing away, but defendant had apparently swallowed whatever had been in his mouth. Defendant was pressed against the hood of the car, placed in handcuffs and taken as a state prisoner to the police station.

Defendant's Oldsmobile was seized and taken into state custody. The car, defendant and his woman companion were searched but the marked money furnished Green was not found. No heroin was found in the car, on defendant's person or in his clothing, or in his room at his home on South 20th Street, which was subsequently searched. Defendant was interrogated at the police station on the day following his arrest. We discuss this matter *infra*.

About a week after defendant's arrest, Agent Groom searched the Oldsmobile at the Beacon Tow Service in Rich-

mond and found in the glove compartment a piece of brown paper, somewhat larger than the brown paper in which the bindles of heroin were wrapped. This piece of paper, which was about 2¾ inches by 4½ inches and appears to be a torn piece of an ordinary brown grocery bag, was admitted in evidence over defendant's objection. On April 4, 1962, Agent Groom made another search of defendant's car at a San Francisco garage where it was then impounded and found one marijuana seed wedged beneath the carpeting on the passenger's side of the car. Defendant's motion to strike Groom's testimony pertaining to the discovery of the seed was denied. The seed itself was received in evidence without objection.

Green, the informer, did not testify. Defendant took the stand in his own behalf and in fact was the sole defense witness. Defendant denied that he sold heroin to Green at Newell's Market, that he met Green there on December 21 or any other day or that he was at the market at any time on December 21. He also denied that on December 21 or any other date he received a telephone call from Green in which the latter suggested that defendant meet him at Newell's Market. Nor did Green at any time call or see him in order to ask for a ''deuce,'' an expression which defendant said was meaningless to him. According to defendant, he was not at home at the time the telephone call in question was made.

Defendant, through his court-appointed counsel, contends that his conviction for selling heroin as charged in count one of the indictment must be reversed because (a) illegally seized evidence admitted at the trial contributed to the conviction and (b) at the critical time of the alleged meeting with the informer, defendant, if he was present, was not represented by counsel although the prosecution had then focused accusatory process on him. He also contends that his conviction for assault under count two must be reversed because (a) he was entitled to use reasonable means to protect himself from a violation of his constitutional right not to have material forcibly extracted from his mouth and (b) an incriminating statement made by him while he was being interrogated without counsel was admitted in evidence. We propose to consider these contentions in the order presented. We will thereafter discuss certain additional arguments urged in a separate opening brief filed herein by defendant in propria persona.[1]

[1] On May 21, 1963, defendant's retained counsel having withdrawn with defendant's consent, we appointed counsel for defendant on appeal. On June 18, 1963, on the request of said counsel, we vacated his appointment

1. *The sale of heroin.*

 (a) Illegal search and seizure.

Defendant contends that the search of his automobile by Agent Groom at the Beacon Tow Service a week after his arrest was illegal and that the piece of brown paper taken in the course thereof from the glove compartment was illegally seized. It does not appear, nor do the People claim, that Groom had a search warrant on the occasion referred to and, in the absence of such a showing, we must conclude that he did not have one. (*People* v. *Burke* (1964) 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67].) The Attorney General also concedes that he does not seek to uphold the legality of the search on the ground that it was made incidental to defendant's arrest. (See *People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Hammond* (1960) 54 Cal.2d 846, 853 [9 Cal.Rptr. 233, 357 P.2d 289]; *People* v. *Torres* (1961) 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823].) Indeed, it seems clear that no such claim could be properly made. (*People* v. *Burke, supra,* 61 Cal.2d 575, 579; *Preston* v. *United States* (1964) 376 U.S. 364, 366-367 [84 S.Ct. 881, 11 L.Ed.2d 777].)

 The Attorney General asserts that the search and seizure were lawful because at that time title to the car had vested in the state. His argument runs as follows: Health and Safety Code section 11611[2] requires any state peace officer, upon making an arrest for a narcotics violation, to seize any vehicle used to unlawfully transport, keep or conceal any narcotic or to facilitate its possession by an occupant thereof and to immediately deliver such vehicle to the Division of Narcotic Enforcement to be held as evidence in a later for-

---

and on October 10, 1963, we appointed another counsel for defendant. On April 16, 1964, we vacated this second appointment and on May 11, 1964, appointed Michael Traynor, Esq., his present counsel, to represent defendant on appeal. Mr. Traynor did not represent defendant at trial. Defendant's opening brief in propria persona was filed herein on September 18, 1963.

 [2]Section 11611 provides: ''Any peace officer of this State, upon making or attempting to make an arrest for a violation of this division, shall seize any vehicle used to unlawfully transport any narcotic or to facilitate the unlawful transportation of any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed or which is used to facilitate the unlawful keeping, depositing or concealment of any narcotic, or in which any narcotic is unlawfully possessed by an occupant thereof, or which is used to facilitate the unlawful possession of a narcotic by an occupant thereof, and shall immediately deliver such vehicle to the Division of Narcotic Enforcement of the Department of Justice to be held as evidence until a forfeiture has been declared or a release ordered.''

feiture proceeding. (See Health & Saf. Code, § 11610.[3]) At the time defendant was arrested and his car seized, there was "overwhelming" evidence constituting "ample cause" for the officers to believe that defendant had violated the narcotics laws and had "unlawfully transported" or "concealed" narcotics in the car. When the car was seized "a proceeding independent from the criminal action was set into motion" and title, though inchoate, vested in the state at the time of the prohibited act. Under the authority of *People* v. *Broad* (1932) 216 Cal. 1, 4 [12 P.2d 941] and *People* v. *One 1953 Buick* (1962) 57 Cal.2d 358, 364-365 [19 Cal.Rptr. 488, 369 P.2d 16], subsequent final judicial determination of forfeiture merely "dates back" to the commission of the offense. Therefore, such reasoning concludes, since title to the car was properly in the state, its Agent Groom had the right to search it. This conclusion, the People argue, is further buttressed by *Burge* v. *United States* (9th Cir. 1964) 333 F.2d 210.

We are not persuaded by the argument. In the first place, the instant record nowhere discloses that forfeiture proceedings were instituted in respect to defendant's car, much less that there was a judgment declaring the car forfeited to the state. Even under the People's cited cases, the title which they invoke depends upon a judicial determination of forfeiture and does not relate back to the time of seizure of the car until *after* such determination. (*People* v. *Broad, supra,* 216 Cal. 1, 4; *People* v. *One 1953 Buick, supra,* 57 Cal.2d 358, 364-365.) ■ The requisite judicial determination is not revealed in this record. At oral argument and in a subsequent letter filed herein, the Attorney General advised us that a judgment of forfeiture of defendant's car was entered on the day following the termination of defendant's trial and invited us to take judicial notice of such judgment and presumably of its antecedent proceedings, all separate from those of the instant case. We decline to do so. The judgment referred to was not in existence at the time of defendant's trial and therefore neither could have been, nor was it, availed of by the People to prove the legal basis now asserted for the search of the car. It is true that judicial notice is a kind of evidence

---

[3]Section 11610 provides: "The interest of any registered owner of a vehicle used to unlawfully transport or facilitate the unlawful transportation of any narcotic, or in which any narcotic is unlawfully kept, deposited, or concealed or which is used to facilitate the unlawful keeping, depositing or concealment of any narcotic, or in which any narcotic is unlawfully possessed by an occupant thereof or which is used to facilitate the unlawful possession of any narcotic by an occupant thereof, shall be forfeited to the State."

which may be relied on to support a judgment or ruling. (Code Civ. Proc., § 1827, subd. 1; *Estate of Fawcett* (1965) 232 Cal.App.2d 770, 782 [43 Cal.Rptr. 160].) Even assuming that this evidence would have the effect desired by the People under their theory of relation back, the simple fact is that no such evidence existed at the time of defendant's trial so as to furnish such proof.

Although the main thrust of the People's argument is that under a theory of relation back title was vested in the state at the time of the search, thereby justifying the search and distinguishing this case from *People* v. *Burke, supra,* 61 Cal.2d 575 and *Preston* v. *United States, supra,* 376 U.S. 364, the Attorney General also seems to argue that independent of any theory of ''vested title,'' a legal basis for the search can be found in Health and Safety Code section 11611 (see fn. 2, *ante*). The gist of this claim is this: that the section is a mandate to narcotic officers not only to *seize* and *deliver* (to the Division of Narcotic Enforcement) a vehicle but also to determine whether narcotics were unlawfully ''kept, deposited or concealed'' therein and therefore to search the car. Aside from his reliance on *Burge* v. *United States, supra,* 333 F.2d 210, the Attorney General has referred us to no case, nor has any been found, holding that section 11611 invests state officers with such authority. Nor has he furnished us with any analysis supporting such conclusion as being within the intended scope of the section. Nor does he rely on the line of authority[4] noted *infra* holding that where officers have lawful custody of a car, articles found therein are also lawfully in their possession without the occurrence of any new seizure.

Both *Preston* and *Burke* held that a search of an automobile made without a warrant but *not* incidental to a lawful arrest failed to meet constitutional standards of reasonableness and that the evidence obtained as a result thereof was inadmissible. In both cases the interdicted search was made on the *same day* as the arrest—in *Preston* ''soon after'' defendants had been booked, in *Burke* no later than eleven hours after defendant was arrested. In *Burke,* the court held that Vehicle Code section 22651, subdivision (h), and related section 22850 authorizing the removal and impounding of defendant's car ''do not purport to authorize the making of a search.'' (61 Cal.2d at p. 580.) In both cases the automobiles were in lawful custody of the police and in *Burke* there was further statutory support therefor. (Veh. Code, §§ 22651, subd. (h), 22850.)

---

[4]See fn. 5, *infra.*

■ In the instant case, as in both of the above cases, the automobile was in lawful custody of the officers at the time of the search in question, at least under Health and Safety Code section 11611, if not on other grounds. Here the Attorney General concedes that the search of the car made *one week* after defendant's arrest was not incidental to defendant's arrest but at the same time, as was done in *Burke,* invokes statutory authority for the search. In this case the justification is sought in Health and Safety Code section 11611, rather than in Vehicle Code section 22651. Contrary to the claim of the Attorney General, there is no language in section 11611 expressly authorizing, let alone commanding, the search of an automobile for additional evidence that narcotics were "unlawfully kept, deposited or concealed" therein. It has been held that the provisions of the section are merely directory. (*People* v. *One 1951 Chevrolet* (1958) 157 Cal. App.2d 301, 305 [320 P.2d 881].) ■ Obviously the statute relied upon is part of the enforcement procedure established for the forfeiture of vehicles (Health & Saf. Code, §§ 11610-11629). As previously pointed out, it provides for the seizure, delivery and holding for evidence of such vehicles. Absent clear and express language authorizing search, we are not disposed to find therein by implication authority to make a warrantless search and on such a slender and frail basis to sweep aside defendant's vital Fourth Amendment rights.

■ As we see it, the philosophy of *Preston* and *Burke* is that lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it.[5] We are therefore not persuaded by *Burge* v. *United*

---

[5]*Burke* does not discuss, much less express disapproval, of a line of authority holding that, where an automobile is lawfully in the custody of the police, articles contained therein are also in their possession so that any subsequent search of the automobile does not constitute a new seizure of its contents. (See *People* v. *Ortiz* (1956) 147 Cal.App.2d 248, 251 [305 P.2d 145]; *People* v. *Simpson* (1959) 170 Cal.App.2d 524, 530 [339 P.2d 156]; *People* v. *Nebbitt* (1960) 183 Cal.App.2d 452, 460-461 [7 Cal.Rptr. 8]; *People* v. *Myles* (1961) 189 Cal.App.2d 42, 48 [10 Cal. Rptr. 733], cert. denied 371 U.S. 872 [83 S.Ct. 140, 9 L.Ed.2d 109]; *People* v. *Odegard* (1962) 203 Cal.App.2d 427, 432 [21 Cal.Rptr. 515]; *People* v. *Garcia* (1963) 214 Cal.App.2d 681, 684-685 [29 Cal.Rptr. 609]; but see *People* v. *Garrison* (1961) 189 Cal.App.2d 549, 555-556 [11 Cal. Rptr. 398].) In almost all of the above cases the search was made for the purpose of making an inventory of the contents of the car preliminarily to impounding it and in any event reasonably contemporaneously with the arrest of its driver. (See *People* v. *Ortiz, supra; People* v. *Simpson, supra; People* v. *Nebbitt, supra; People* v. *Myles, supra; People* v. *Garcia, supra.*) In *People* v. *Odegard, supra,* the search was not made in the course of impounding the car but two days *after* the car was impounded and its occupants arrested. We can only speculate

*States, supra,* 333 F.2d 210, relied on by the People, which though decided after *Preston* fails to mention that case[6] and which apart from that consideration is not binding on us in any event even on a federal question. (*Stock* v. *Plunkett* (1919) 181 Cal. 193, 194-195 [183 P. 657].)

We therefore hold that the search of defendant's car by Groom was illegal and the evidence obtained as a result thereof, consisting of the piece of brown paper, was inadmissible. (*Mapp* v. *Ohio* (1961) 367 U.S. 643, 655 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933].)

Can defendant now urge on appeal the inadmissibility of the brown paper found in the glove compartment? The paper in question was part of the same exhibit (People's No. 4) with the two bindles of heroin and the brown piece of paper in which the bindles were wrapped.[7] People's Exhibit No. 4 for identification was thereafter offered in evidence during the testimony of prosecution witness Hillard M. Reeves, a criminalist for the Richmond Police Department. At that time, as defendant here concedes, the only objection interposed was that "a proper chain of possession" had not been established in respect to the entire exhibit. The objection was overruled. The Attorney General now contends that by failing to object at trial that the piece of brown paper was inadmissible as the product of an illegal search, defendant is precluded from asserting such objection here.

It is well settled that a defendant, who fails to object at the trial to the admission of evidence on the ground that it was obtained by an unlawful search and seizure, may not raise the question for the first time on appeal. (*People* v. *Richardson* (1959) 51 Cal.2d 445, 447 [334 P.2d 573]; *People* v. *Hyde* (1958) 51 Cal.2d 152, 157 [331 P.2d 42]; *People* v. *Hunter* (1963) 218 Cal.App.2d 385, 394 [33 Cal.Rptr. 15]; *People* v. *Gurrola* (1963) 218 Cal.App.2d 349, 354 [32 Cal.

---

that the court in *Burke* did not expressly disapprove these cases because in the main they equate inventorying preliminary to impounding with reasonable search. Nevertheless we feel that the holding in *Burke,* though containing no express disapproval of these cases, is in conflict with the broad statements found therein to the effect that a search of a lawfully impounded vehicle is reasonable because the police *ipso facto* have possession of all its contents and require no search warrant to uncover and seize them.

[6]*Preston* was decided March 23, 1964, and *Burge* on May 29, 1964.

[7]The record shows that when this exhibit was first marked for identification only, during the first part of the testimony of the witness Groom, it embraced only the last three objects. Later on in his testimony, Groom referred to the paper from the glove compartment which had been made part of the same exhibit for identification.

Rptr. 368]; see generally 3 Cal.Jur.2d, § 140, p. 604; Witkin, Cal. Evidence (1958) § 700, p. 732.)

However in *People* v. *Kitchens* (1956) 46 Cal.2d 260, 262-263 [294 P.2d 17], where the trial was had before the decision in *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], the court said: "Although we adhere to the rule that ordinarily the admissibility of evidence will not be reviewed on appeal in the absence of a proper objection in the trial court, we conclude that it is not applicable to appeals based on the admission of illegally obtained evidence in cases that were tried before the Cahan decision. This practice was adopted by the federal courts following the decision of the United States Supreme Court in *McNabb* v. *United States*, 318 U.S. 332 [63 S.Ct. 608, 87 L.Ed. 819], holding confessions obtained during a period of illegal detention inadmissible even if voluntarily made. [Citations.] A contrary holding would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal. Moreover, in view of the decisions of this court prior to *People* v. *Cahan, supra,* an objection would have been futile, and 'The law neither does nor requires idle acts.' (Civ. Code, § 3532.)"

We observe that the case at bench was tried in April 1962 and therefore before the decision of *People* v. *Burke, supra,* 61 Cal.2d 575 on July 30, 1964. ■ Applying the rationale of *Kitchens,* we conclude that the general rule of appellate review should not be made applicable here since defendant could not have anticipated the change in the law in respect to searches of impounded automobiles in the lawful custody of the authorities and since we think any objection he would have made would have been futile in view of the prior decisions of appellate courts (see fn. 5, *ante*) holding in effect that legal custody of the car imparted legal possession of the contents.

■ Nevertheless, although we are of the view that the admission in evidence of the piece of brown paper was error which defendant is entitled to assert on appeal, we have concluded that such error was not sufficiently prejudicial under either test of prejudice urged by defendant to require a reversal.

Defendant argues that there was not only a reasonable possibility but also a reasonable probability that the piece of paper contributed to his conviction. In support of this argu-

ment he underscores the following alleged "weaknesses" in the evidence against him: The unreliability of the informer Green; the failure to search the telephone booth; the failure to find the marked money; the conflict in the testimony of Groom and Sullivan as to Green's position at the Oldsmobile; the testimony of the agents that the person in the Oldsmobile "appeared to be" defendant; and the failure to discover any other heroin on defendant's person or in his car or residence.

The record before us shows that defendant was tried and convicted for selling heroin to Green at Newell's Market on December 21, 1961. Contrary to defendant's apparent claim, this is not a case where defendant was arrested upon information received from an informant and the reliability of the informant is in issue. (See *Willson* v. *Superior Court* (1956) 46 Cal.2d 291, 294-295 [294 P.2d 36] ; *People* v. *Bates* (1958) 163 Cal.App.2d 847, 851 [330 P.2d 102] ; *People* v. *Burke* (1962) 208 Cal.App.2d 149, 155-156 [24 Cal.Rptr. 912].) Here the evidence set forth in detail by us at the beginning of this opinion establishes the sale by sufficient circumstantial evidence based upon an adequate presale search of the informant followed by a continuous visual observation of him by the officers as a group between the time of said presale search and the time of the ultimate delivery of the heroin by him to the officers after the sale, thereby eliminating any "gap" in the surveillance and any claim of his contact with any person other than defendant. (*People* v. *Basler* (1963) 217 Cal. App.2d 389, 394-397 [31 Cal.Rptr. 884] ; *People* v. *Robison* (1961) 193 Cal.App.2d 410, 411-412 [14 Cal.Rptr. 181] ; *People* v. *Givens* (1961) 191 Cal.App.2d 834, 838 [13 Cal.Rptr. 157] ; *People* v. *Wilkins* (1960) 178 Cal.App.2d 242, 245 [2 Cal.Rptr. 908].) This chain of circumstances has its own factual integrity. It effectively linked defendant to the heroin admitted in evidence and did not require as one of its links the brown piece of paper here in dispute. After an examination of the entire cause, including the evidence, it does not appear to us to be reasonably probable that a result more favorable to defendant would have been reached in the absence of the above error. We cannot say there has been a miscarriage of justice. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Nor, assuming without deciding that, as defendant would have it, we are called upon to inquire whether "there is a reasonable possibility that the evidence complained of might have contributed to the conviction" (*Fahy* v. *Connecticut* (1963) 375 U.S. 85, 86-87 [84 S.Ct.

229, 11 L.Ed.2d 171]), are we of the opinion that such reasonable possibility here exists. Indeed, in the light of the entire record, including the compelling characteristics of the sale and presale search, we are at a loss to understand what actual probative value this piece of an ordinary paper bag could possibly have, there being no testimony establishing that it was a piece of the same paper in which the heroin was wrapped.

(b) Defendant's right to counsel.

■ Defendant makes the unique claim that his conviction must be reversed because, *if* he was present at the time of the sale of heroin, he was not there represented by counsel, citing *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] and *Massiah* v. *United States* (1964) 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246]. Neither case is here applicable. At the time of the sale defendant was neither in custody (*Escobedo*) nor under indictment (*Massiah*).

2. *The assault.*

■ Defendant contends that his act of biting Agent Groom's finger was not unlawful since Groom was violating defendant's constitutional rights by trying to forcibly extract material from defendant's mouth and defendant therefore could use reasonable means to forestall such violation.

This contention is essentially one that the evidence is insufficient to support the verdict. However, the evidence viewed as it must be in the light favorable to the People does not show that Agent Groom deliberately put his finger in defendant's mouth. Groom's testimony definitely states that he tried to grab defendant's hand in order to prevent the latter from putting the package in his mouth and that defendant thereupon "forced my finger in with the package and everything went in together." The trier of fact was warranted in concluding that this was an involuntary act on Groom's part and the subsequent chewing of the finger was a wilful act on defendant's part. The evidence, thus viewed, does not establish that Groom was engaged in "conduct that shocks the conscience" (*Rochin* v. *California* (1952) 342 U.S. 165, 172 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]) or was in the process of using brutal and shocking force upon defendant so as to compel the conclusion that defendant's rights were being violated. (See *People* v. *Martinez* (1954) 130 Cal.App.2d 54, 56 [278 P.2d 26]; *People* v. *Sevilla* (1961) 192 Cal.App.2d 570, 574-575 [13 Cal.Rptr. 714]; *People* v. *Erickson* (1962) 210 Cal.App.2d 177, 180-182 [26 Cal.Rptr. 546].) Defendant's

arguments to the contrary, including his claims that Groom's testimony is improbable, are more properly addressed to the trier of fact than to this court.

We conclude that defendant's conviction of simple assault is supported by the evidence. His extrajudicial statement relating to his commission of this offense will be dealt with under the next heading.

3. *Defendant's incriminating statements.*

Defendant contends that the admission in evidence of an incriminating statement made by him in reference to his biting Agent Groom's finger constitutes reversible error under the rule announced in *Escobedo* v. *Illinois, supra,* 378 U.S. 478, and followed in *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. At oral argument our attention was directed to other incriminating statements to which these rules may have application.

We first set forth the pertinent facts. Defendant was interrogated on the day after his arrest in the vice office of the Richmond Police Department. Six officers, including Agent Groom, were present.

At the trial, Groom testified that at the above interrogation he asked defendant what the latter had put in his mouth when he was arrested and defendant replied that it was a marijuana cigarette. Groom then said that it didn't look like a marijuana cigarette and defendant replied that he had folded it in half. Groom then asked if he had it wrapped and defendant said it was wrapped in brown paper. According to Groom's testimony on cross and redirect examination, defendant later on in the same interview said that he had possibly swallowed some breath pills.

Groom further testified that during the same interview he said to defendant "You would have been better off if you hadn't chewed my finger" and that defendant replied "that he was sorry, but he had heard about people getting choked and he thought that he might be getting choked."

In addition, as we have already pointed out, Groom in narrating defendant's arrest testified that when he first grabbed defendant's wrist the latter stated that there were marijuana cigarettes over the sun visor of the car but that he had not put them there.

Following the decision of the Supreme Court of the United States in *Escobedo* v. *Illinois, supra,* 378 U.S. 478, the Supreme Court of California held in *People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354, "that defendant's confession could not

properly be introduced into evidence because (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights.''

In respect to the first statement by defendant that he was chewing a marijuana cigarette, we are satisfied that all of the conditions set forth in *Dorado* have been met and that the admission of such statement was error. At that time the investigation had focused on defendant and he was in custody, these two circumstances being encompassed by defendant's arrest. (*People* v. *Stewart* (1965) 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97].) It is also clear from an analysis of ''the total situation which envelops the questioning'' (*People* v. *Stewart, supra,* at p. 579) that the officers were then carrying out ''a process of interrogations that lent itself to eliciting incriminating statements.'' (*People* v. *Dorado, supra,* 62 Cal.2d 338, 353.) Finally, the record fails to show that defendant was advised of his right to counsel or of his absolute right to remain silent or that defendant waived these rights so that the fourth condition of the *Dorado* rule is satisfied. (*People* v. *Stewart, supra,* at p. 581.)

The foregoing statements obviously are not a confession of the crime charged (sale of heroin) and do not therefore constitute reversible error. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 356; *People* v. *Finn* (1965) 232 Cal.App.2d 422, 427-429 [42 Cal.Rptr. 704].) It is arguable that defendant's statement that the cigarette was wrapped in brown paper may have some relevancy as an admission since the heroin delivered earlier in the day by defendant to Green was wrapped in brown paper. We feel that to give this passing general reference to ''brown'' paper any significance is merely to indulge in speculation. The Attorney General makes no point of it. The balance of the statement is not ''relative to the offense'' with which defendant was charged. (Cf. *People* v. *Atchley* (1959) 53 Cal.2d 160, 170 [346 P.2d 764], appeal dismissed 366 U.S. 207 [81 S.Ct. 1051, 6 L.Ed.2d 233].) The admission of these first statements was not prejudicial in the light of the entire record.

The other two statements set forth above do not fall within the *Dorado* rule. Defendant's reply to Groom in refer-

ence to "chewing" the latter's finger was not incriminating but merely an apology susceptible of inferences favorable rather than unfavorable to defendant. Defendant's statement in reference to marijuana cigarettes under the sun visor was spontaneously made, before he was in custody and without any process of interrogation.

4. *Defendant's additional contentions.*

We briefly dispose of certain other contentions made by defendant in his opening brief filed by him in propria persona. (See fn. 1, *ante.*)

 First: Defendant claims that he was denied a fair trial because the court expressed an opinion of his guilt before the defense presented any evidence. The claim has no merit. Our examination of that portion of the record to which defendant refers indicates merely that the court, on denying defendant's motion for an acquittal at the conclusion of the prosecution's case in chief, observed that the People had made out a prima facie case.

Second: Defendant raises the lack of probable cause for his arrest on the grounds that Green was not a reliable informant. As we have already explained, defendant's arrest is not predicated on this basis.

Third: Defendant claims that the search of his room was illegal. In the first place, it was made with the consent of his aunt in whose house defendant lived. Furthermore no evidence produced by such search was introduced against defendant.

Fourth: It is also urged that his statements about marijuana made at the time of his arrest were coerced and infected by his illegal arrest. The record does not sustain the claim; moreover it shows that no objection was ever interposed. Finally, as we have explained, the arrest was legal.

Fifth: He asserts that the prosecutor was guilty of prejudicial misconduct and bad faith during his cross-examination of defendant. Our examination of those portions of the record relied upon discloses no misconduct. Except in two instances, defendant made no objection to the questions he now criticizes. In one instance defendant's objection as to the competency, relevancy and materiality of the information sought was properly overruled. In the other instance, also embraced by defendant's complaint, his objection was sustained.

 Sixth: Defendant claims that the trial court erred in receiving in evidence Agent Armenta's testimony as to the

telephone conversation between Green and "Joe" which Armenta heard by the use of a listening device. It is urged that this evidence was obtained in violation of the Federal Communications Act (47 U.S.C. § 605) and Penal Code section 640. The conversation was not intercepted by the authorities in violation of either of these two statutes because the interception was authorized and consented to by Green. (*People* v. *Malotte* (1956) 46 Cal.2d 59, 64 [292 P.2d 517]; *Rathbun* v. *United States* (1957) 355 U.S. 107, 109 [78 S.Ct. 161, 2 L.Ed.2d 134].)

Seventh: Defendant argues that his trial counsel was incompetent in conducting his defense so that he was denied proper representation at the trial. The record establishes that defendant was ably represented as indeed the court pointed out to defendant at the conclusion of the trial. The charge is groundless. (*People* v. *Ford* (1962) 200 Cal.App.2d 905, 914 [19 Cal.Rptr. 758].)

We have considered the other points raised by defendant in his brief filed in propria persona and have concluded that they are without merit and need not be discussed in detail.

The judgment is affirmed.

Molinari, J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 21, 1965. Traynor, C. J., did not participate therein.