JAMES ALVIN HEFFLEY, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 5115

February 17, 1967                    423 P.2d 666

[Rehearing denied March 20, 1967]

*James C. Martin,* of Carson City, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Herbert J. Santos,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

On October 25, 1965 the residence of Eccles and Chester was burglarized in Washoe County. Among the items stolen were Eccles' passport, Chester's passport, a trailer registration, and a truck title. No identity of the culprit was established at that time.

Heffley was arrested in his automobile in Sacramento, California, on November 13, 1965, while he was waiting for a stop light. Officer Santich, the arresting officer, had received a radio report that a person driving a car answering the description of that of Heffley was attempting to sell guns to pawn shops and he was ordered to investigate. Santich approached Heffley at the stop light and while interrogating him saw the butt of a pistol under the driver's seat. He also observed several shotguns, rifles, and pistols piled on the rear seat. He ordered Heffley out of the car, arrested him for possession of the pistol, took the pistol from the car, and then had Heffley taken to jail in another police car which had been summoned by Santich. Santich drove Heffley's car to the same police station three blocks away.

A complete search of the entire automobile was immediately made at the station by officer Santich. He looked into the trunk and under the hood, although no unusual articles were found in those places. On the floor by the rear seat he found the two passports and the two certificates of registration along with, of course, the arsenal of guns. He made a list of the items he found in the automobile.

Santich gave the documents to officer Waters who after advising Heffley of his constitutional rights showed Heffley those instruments and questioned him concerning them. While it is not clear at what stage he obtained the information from Heffley that they were not his, nevertheless, from information obtained from Heffley, Waters called the Washoe County Sheriff's Department and was informed of the Eccles-Chester

burglary. Thereafter, Heffley confronted by Waters with this information, readily confessed to the burglary. Subsequently, Heffley was found guilty of second degree burglary and also of being an habitual criminal and was sentenced to life imprisonment.

Heffley contends on appeal that the passports and certificates and his resultant confession when confronted with them were fruits of an illegal search which contributed to his conviction.

1. We do not feel compelled to decide this case on the basis that the search of defendant's car was incidental to his lawful arrest. Preston v. United States, 376 U.S. 364 (1964); Thurlow v. State, 81 Nev. 510, 406 P.2d 918 (1965); State v. Schwartzenberger, 422 P.2d 323 (Wash. 1966). Preston and Thurlow involved general exploratory searches, extensive in character. In both instances, the searches of the vehicles were held too remote from the arrest and therefore unreasonable under the circumstances. Our consideration is focused directly to the reasonableness of the search which was conducted after Heffley was placed in custody and his automobile impounded at the police station.

The constitutional rule that a search warrant must be obtained before a search is conducted is not without exception. If the search is for the purposes of inventory of personal effects and not exploratory, articles found as a result which supply the foundation for a reasonable suspicion on the part of the police are not subject to unlawful search and seizure. This is so because the police are in a place where they have a right and obligation to be, as in this case, when they find the objects of seizure. People v. Ortiz, 305 P.2d 145 (Cal. 1956); People v. Simpson, 339 P.2d 156 (Cal. 1959); State v. Wade, 376 P.2d 915 (Kan. 1962); State v. Olson, 263 P.2d 824 (Wash. 1953).[1]

The police officer, when there is just cause, has a duty not only to impound a car from the public highway for its own protection, but also to inventory the contents so that they may be safeguarded for the owner. Such practice is deemed necessary to defeat dishonest claims of theft of the car's contents and to protect the temporary storage bailee against false charges. People v. Ortiz, supra. If, however, the policing conduct indicates that the intention is exploratory rather than

---

[1]Approval of the inventory doctrine is footnoted in People v. Cooper, 44 Cal.Rptr. 483, page 491 (1965), decided after Preston, supra.

inventory the fruits of that search are forbidden. People v. Garrison, 11 Cal.Rptr. 398 (1961). Unfortunately, distinguishing inventory from exploration may prove to be ambitious and unprecise. We can only say that each case must be determined upon its own facts and circumstances.

The historical difference in treatment between buildings and automobiles justifies the inventory procedure used by the police. The fundamental right of privacy connected with a man's home is understandably different and in greater need of protection than an automobile on the public right of way. In the latter case the police and other people using the public highway, as well as the owner of the vehicle, have an interest which must be protected. Chapman v. United States, 365 U.S. 610 (1961); Carroll v. United States, 267 U.S. 132 (1924).

In this case from the time of seizure of the car until the inventory at the police station, the vehicle was in the lawful custody of the officers. In these circumstances the search without a warrant of defendant's automobile could not be said to be "unreasonable." It is only unreasonable searches that are prohibited by the Constitution. United States v. Rabinowitz, 339 U.S. 56 (1950).

We acknowledged the duty of police officers to inventory at the police station in Arabia v. State, 82 Nev. 453, 421 P.2d 952 (1966). "The segregation of prisoners and the inventorying of their personal belongings is a matter of internal police administration, and does not offend the purposes of the Fourth Amendment. During the period of police custody, an arrested person's personal effects, like his person, are subject to reasonable inspection, examination, and test." (Concurring opinion of JUSTICE THOMPSON.)

Consequently, since no right of the defendant was violated by reason of the inspection of the guns in the back seat of his automobile, the officer was not required to overlook the passports and registrations which became visible, or were already visible, when the interior of the car was examined at the police station. Under the circumstances the possession of this evidence was legally obtained by the police and properly received. The officers are not bound to ignore this evidence. It is also not rendered inadmissible simply because it was unrelated to the initial purpose for which the investigation of the car was begun. See People v. Loomis, 42 Cal.Rptr. 124 (1965).

State v. Elkins, 422 P.2d 250 (Ore. 1966), is distinguishable. There a police officer, in the process of an arrest, sent certain pills found on Elkins to be analyzed. He had no basis for suspicion that the pills were a narcotic.

We find no such analogy to the facts here. Heffley's car was loaded with an unusually large number of guns in plain view on the rear seat. The officers had the responsibility to inventory the property, for if it later developed that Heffley owned the guns and the automobile they would be responsible for their safekeeping. The requirement to inventory placed the California Police officers in lawful possession of everything they found in the car at the time it was taken into custody. When they found the passport and certificates of ownership of vehicles lying near the back seat they not only became responsible for their safekeeping, but under the circumstances they had good cause to become suspicious and inquisitive since the documents bore names other than Heffley's.

Law officers are expected to be suspicious and inquisitive. The society they protect demands that they ask questions. Officer Waters asked Heffley about the certificates. At first, he stated that the owners were his friends. Later, he confessed that they were products of the burglary for which he now stands convicted.

The criminal implications of Heffley's possession of the evidence were voluntarily supplied by Heffley. It is conceded that in all other respects the confession met the constitutional requirements of Escobedo and Miranda.[2] We subscribe, therefore, to the rule that if during a lawful search possible evidence of a crime other than that for which an arrest is made comes to an officer's attention it is his duty to pay heed to it. The officer was in a place he had a right to be and doing a thing he had a right to do. He is not required to turn his eyes away. The evidence and confession were properly received.

Affirmed.

COLLINS, J., concurring:

I concur in the result of the opinion by MR. JUSTICE ZENOFF and add the following:

Things seized for which there are reasonable grounds for suspicion by a police officer that they are the implements or

---

[2]Escobedo v. Illinois, 378 U.S. 478 (1964); Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2d 694 (1966).

fruits of a crime, other than that for which the arrest was lawfully made, require the officer to make further investigation. And where, as here, the suspicion proved true, the evidence may be lawfully admitted. Its seizure, following a lawful arrest, does not violate the constitutional prohibition of either Nevada or the United States against unlawful searches and seizures. See State v. Elkins, 422 P.2d 250 (Ore. 1966). The crux of this rule is "reasonable suspicion" in the officer's mind. If he can point to facts, circumstances or even statements of the person arrested as basis for the reasonable suspicion, then his duty to pursue the investigation further is clear. That is exactly what happened here, and the arresting officer's suspicion as to the two passports and certificates of registration was reasonable as being fruits and implements of another crime. Without further investigation he could not and would not know what other crime was committed or where. The impression or suspicion gained from a consideration of all the circumstances of the case created his obligation and right to inquire further. It might be argued he was obligated to get a search warrant from a magistrate before searching the car further or seizing the evidence, but how could he state under oath sufficient facts to get a search warrant at that moment? He did not know and could not know the passports and registration certificates were products of a burglary in Washoe County, Nevada, or any other crime committed in any other place. As a matter of practical necessity, the officer had to continue his investigation based upon the reasonable suspicion present. When the investigation was completed, he had no need for the search warrant. He then had actual knowledge of the commission of a felony burglary in Washoe County, Nevada, and reasonable grounds to believe appellant committed it. It is said in Abel v. United States, 362 U.S. 217 (1960), "When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for." Also see Carroll v. United States, 267 U.S. 132 (1925). It seems to me it would be "entirely without reason" to require the officer to return the two passports and registration to appellant or to expect the trial court to suppress them as evidence.

THOMPSON, C. J., dissenting:

I would set aside this conviction on the authority of Preston v. United States, 376 U.S. 364 (1964), and Thurlow v. State, 81 Nev. 510, 406 P.2d 918 (1965). A warrantless search of

the defendant's car at a time when he was in jail and at a place remote from the place of his lawful arrest is not constitutionally permissible. I find no suggestion in the search and seizure opinions of the United States Supreme Court that securing an inventory of items in the defendant's car somehow makes those items constitutional evidence in a later trial for a crime wholly unrelated to the initial arrest. Such a notion completely destroys the rationale of Preston and, I think, is a transparent effort to avoid its doctrine.

I dissent.