STATE OF NORTH CAROLINA v. NATHANIEL PHIFER

No. 7826SC592

(Filed 2 January 1979)

1. Searches and Seizures § 11— inventory of contents of impounded vehicle—State's burden of proof

In order for an inventory of the contents of a vehicle being impounded after the arrest of the driver not to violate the Fourth Amendment proscription against unreasonable searches and seizures, the State must show that the automobile was lawfully impounded, there being a demonstrable need for its impoundment; that the driver was not arrested as a subterfuge for searching the vehicle; that the inventory was reasonably related to its purpose, which is the protection of the owner from loss and the police or other custodian from unjust claims; that the inventory itself was reasonable and not exploratory in character; and that the inventory was actually conducted under circumstances indicative of a true protective examination of the contents of the vehicle.

2. Searches and Seizures § 11— inventory of contents of impounded vehicle—discovery of cocaine—lawfulness

An inventory of the contents of defendant's car after his arrest pursuant to an outstanding warrant for a traffic violation, during which cocaine was discovered in the locked glove compartment, did not constitute an unreasonable search where defendant was lawfully arrested; the arresting officer determined that it would be unsafe to leave defendant's car at that particular location because of the probability of vandalism and directed his fellow officer to begin a "vehicle inventory form" on the car in accordance with requirements of the city code; the arresting officer then began a search of defendant and discovered a large sum of money on his person; defendant took a key from his shoe and attempted to throw it away, but the officer took the

State v. Phifer

key from defendant; an officer used the key to open the glove compartment and found a plastic bag containing a white powdery substance; and when the substance was discovered, the inventory was stopped, one officer followed the car to the police garage and the other officer obtained a warrant so that the remainder of the car could be searched.

Judge ARNOLD dissenting.

APPEAL by defendant from *Smith (David), Judge.* Judgment entered 28 February 1978, Superior Court, MECKLENBURG County. Heard in the Court of Appeals 23 October 1978.

Defendant was indicted for felonious possession of cocaine and, upon call of the case for trial, moved to suppress the evidence obtained from the glove compartment of his automobile. The motion, after hearing, was denied by the court, and defendant entered a plea of guilty. Upon his plea, judgment of five years imprisonment was entered. From entry of the judgment, defendant appealed.

*Attorney General Edmisten, by Associate Attorney Marilyn R. Rich, for the State.*

*Plumides, Plumides and Shuster, by John G. Plumides, for defendant appellant.*

MORRIS, Chief Judge.

Although defendant grouped eight assignments of error in the Record, only one is brought forward and argued in his brief. It is addressed to the court's denying defendant's motion to suppress the evidence which the arresting officers found in the locked glove compartment of defendant's car while conducting an inventory of the contents of the car.

After a hearing on the motion to suppress, the court made findings of fact and concluded that the motion should be denied and the evidence obtained during the inventory procedure would be admissible in evidence. The defendant properly does not contend that the court's findings are not supported by the evidence. They are indeed supported by the evidence, and are as follows:

"... [T]he Court after hearing evidence of both the State and the Defendant and argument of counsel for both parties makes the following findings of fact: That on the 17th day of

November, 1977, Defendant, Nathaniel Phifer, was operating a 1972, black, Lincoln automobile in the City of Charlotte, that on the 17th day of November, 1977, at about the same time Officer W. F. Christmas of the Charlotte Police Department was on duty and working radar in the City of Charlotte; that Officer Christmas, through his radar equipment, clocked the Defendant driving his 1972 Lincoln automobile at 48 miles per hour in a 35 miles per hour speed zone; that Officer Christmas immediately pursued Defendant's automobile and was able to bring Defendant to a stop; that Defendant was advised that he was speeding 48 miles per hour in a 35 mile per hour zone and was advised that he would receive a citation for said violation; that Officer T. G. Barnes of the Charlotte Police Department was on duty on this date and operating a police vehicle in the City of Charlotte; that Officer T. G. Barnes arrived at the scene shortly after the Defendant was stopped by Officer Christmas and Officer Barnes informed Officer Christmas that he knew the Defendant; that Officer Christmas and Officer Barnes were informed through the Charlotte Police Department radio network that a warrant was outstanding for a traffic violation on Defendant; that Defendant was placed under arrest; that Officer Christmas frisked Defendant Phifer and found One Thousand Ninety-Nine Dollars in cash on his person; that Defendant then took a key from his shoe and tried to throw said key away, but was stopped by Officer Christmas who forceably took the key away from the Defendant; that Officer Christmas believed the key to be a glove compartment key for the 1972 Lincoln automobile;

That Officer Barnes pursuant to Charlotte Police Department policy which was effective February 26, 1976, and entitled Vehicle Towing and Inventory Procedure, pursuant to Charlotte Code, Section 20-11 and 20-20, commenced an inventory of the 1972, black Lincoln automobile; that Officer Barnes found five to eight . . . five eight-track tapes, a lady's coat, pair of blue jeans, a rust-colored sweater and a camera, which were in plain view inside the automobile; that Officer Barnes then took the key from Officer Christmas and opened the locked glove compartment of the 1972 Lincoln automobile and found a plastic bag containing a white powdery sub-

stance at which time Officer Barnes ceased his inventory and informed Officer Christmas that a search warrant was . . . that a search warrant should be obtained; that Officer Christmas did, in fact, obtain a search warrant on the 17th day of November, 1977, at 9:53 o'clock P.M., and a search pursuant to said warrant of a 1972, Lincoln automobile and, more specifically, the trunk thereof; produced a set of scales and residue of a white, powdery substance; that the 1972, Lincoln automobile was towed to the Charlotte Police Department garage immediately after Officer Barnes ceased his inventory upon finding a white, powdery substance or a powder containing a white powdery substance in the glove compartment of said automobile, and prior to obtaining the search warrant as mentioned above;

That Officer Barnes knew the defendant prior to this incident and knew Defendant to be a suspected drug dealer. . . ."

Defendant contends that the procedures employed by the police officers in inventorying the contents of his automobile constituted an illegal search and that the evidence obtained was, therefore, inadmissible. We disagree.

In *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed. 2d 1000 (1976), the Court held that a police inventory which followed standard police procedures, was not unreasonable under the Fourth Amendment. Defendant's car was towed to the city impound lot because of multiple parking violations. The car was locked when towed away and impounded but, at the direction of a police officer, was unlocked after it was impounded. Pursuant to standard police procedures and using a standard inventory form, the officer inventoried the contents of the car, including the contents of the glove compartment, which was not locked. There he found a plastic bag containing marijuana. Defendant was arrested on charges of possession of marijuana, moved to suppress the evidence which the inventory had yielded, the motion was denied, and he was convicted. The Supreme Court of South Dakota reversed the conviction, holding that the evidence had been obtained in violation of the Fourth Amendment prohibition against unreasonable searches and seizures. The Supreme Court of the United States granted certiorari and reversed. In so doing the majority said the standard procedure was not a pretext conceal-

ing an investigatory police motive, and the inventory was not unreasonable in scope. The Court noted that, in relation to the Fourth Amendment, it had traditionally drawn a distinction between automobiles and homes and recognized that one's "expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *Id.*, 428 U.S. at 367, 96 S.Ct. at 3096, 49 L.Ed. 2d at 1004. This is true because the function of the automobile is transportation. Rarely does it serve as one's residence or as the place where one keeps personal effects. For a variety of reasons, police frequently find it necessary and desirable to impound a vehicle. When this is done, most police departments follow a routine procedure of securing the automobile and inventorying its contents.

> "These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, *United States v. Mitchell,* 458 F2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property, *United States v. Kelehar,* 470 F2d 176, 178 (CA5 1972); and the protection of the police from potential danger, *Cooper v. California,* supra, at 61-62, 17 L Ed 2d 730, 87 S Ct 788. The practice has been viewed as essential to respond to incidents of theft or vandalism. See *Cabbler v. Commonweath,* 212 Va 520, 522, 184 SE2d 781, 782 (1971), cert denied, 405 US 1073, 31 L Ed 2d 807, 92 S Ct 1501 (1972); *Warrix v. State,* 50 Wis 2d 368, 376, 184 NW2d 189, 194 (1971)." *Id.,* 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed. 2d at 1005.

The Court noted that the inventory procedure has been upheld by the great majority of State courts as constitutionally permissible, even where the inventory was characterized as a search, and that "the majority of the Federal Courts of Appeal have likewise sustained inventory procedure as reasonable police intrusion." The Court further observed that "these cases have recognized that standard inventories often include an examination of the glove compartment, since it is a customary place for documents of ownership and registration . . . as well as a place for the temporary storage of valuables." *Id.,* 428 U.S. at 372, 96 S.Ct. at 3098, 49 L.Ed 2d at 1007. The Court then adopted the same conclusion: that inventories pursuant to standard police procedures are reasonable, and on the record before it, there was no

evidence that the inventory was other than standard police procedure prevailing throughout the country and "approved by the overwhelming majority of the courts." *Id.*, 428 U.S. at 376, 96 S.Ct. at 3100, 49 L.Ed. 2d at 1009.

While each case must stand on its own facts, a brief review of selected cases results in the conclusion that although the inventory "search" is a unique concept in law and cannot be "analyzed through the use of traditional constitutional tools", 48 Chicago — Kent Law Rev. 48, 52 (1971), certain principles emerge which should be devices for measuring the reasonableness of the procedure in a particular case.

In *People v. Andrews*, 6 Cal. App. 3d 428, 85 Cal. Rptr. 908 (1970), *U.S. cert. denied*, 400 U.S. 908 (1970), the Court held that where all the occupants of an automobile had been properly arrested, the police had the right to remove and impound the automobile and inventory its contents. Items discovered in the trunk during the inventory were held to be admissible in evidence in defendants' trial for burglary. The Court referred to other California cases as follows:

> "*People v. Superior Court*, 2 Cal.App. 3d 304, 309, 82 Cal. Rptr. 766, 770, in an irrelevant context, states, 'Evidence found in an "inventory" preparatory to a "proper impound" is not the result of a "search." ' The court in *People v. Marchese*, supra, 275 A.C.A. 1135, 80 Cal.Rptr. 525, found a police impound and inventory, following a 'drunk driving' arrest which disclosed narcotics in the car's locked trunk, to be proper and part of a ' "customary and well justified procedure" ' with 'no question of its constitutionality.' (P. 1139, 80 Cal. Rptr. p. 527.) The court, however, pointed out that such an inventory must be in 'good faith' and, citing earlier authority, noted that it ' "cannot be used as a subterfuge to cover up otherwise illegal activity, i.e. where the officers are actually engaged in the process of ferreting out evidence to be used in a criminal prosecution they cannot justify such activity under the guise that they were making 'an inventory' for purpose of impounding." ' (P. 1138, 80 Cal. Rptr. pp. 526-527.) In that case it was held proper to list in detail the contents of a duffel bag for 'Little protection to the officer, the owner and the garageman would be afforded if all the of-

ficer could list would be "one duffel bag." ' (P. 1140, 80 Cal.
Rptr. p. 528.) In *People v. Superior Court*, 275 A.C.A. 694, 80
Cal. Rptr. 209, a 'drunk driving' arrest preceded a car's im-
pound and inventory during which narcotics were found in
the trunk. Held, the evidence was properly seized. *People v.
Sesser*, 269 Cal. App. 2d 707, 75 Cal. Rptr. 297, concerned an
automobile driver's robbery arrest after which incriminating
evidence was found in the glove compartment. The court ap-
proved, saying, 'The search in fact in this instance appears to
have been an inventory episode incident to the impounding of
the car.' (P. 711, 75 Cal. Rptr. p. 299.)" 6 Cal. App. 3d at
435-436, 85 Cal. Rptr. at 912-913.

In *People v. Sullivan*, 29 N.Y. 2d 69, 272 N.E. 2d 464 (1971),
an unattended vehicle left in the wrong place was impounded by
New York police. Police department regulations required that the
officer removing the vehicle make an adequate record of valuable
property in the vehicle. The officer examining the vehicle observ-
ed a black plastic brief case. He opened it and found that it con-
tained a loaded pistol. Defendant was indicted for possessing a
loaded gun as a felony. The Supreme Court dismissed the indict-
ment. The Appellate Division of the Supreme Court affirmed. The
Court of Appeals reversed and ordered the indictment reinstated
holding that there was no unreasonable search and the pistol was
admissible. The Court said: "A 'search' is an intrusion under color
of authority on an individual's 'vehicle', 'for the purpose of' seiz-
ing things. (Tentative Draft No. 3. 1970, art. 1, §§ 1.01, Sub d [1])
[referring to Model Code of Pre-Arraignment Procedure of the
American Law Institute]. This is just what the inventory ex-
amination in the present case is not." 29 N.Y. 2d at 77, 272 N.E.
2d at 469. *See also State v. Tully*, 166 Conn. 126, 348 A. 2d 603
(1974), where the officer conducting the inventory opened a knap-
sack on the seat of the car to inventory its contents and
discovered cocaine. The Court held the procedure to be proper.

In *Godbee v. State*, 224 So. 2d 441 (Fla. 1969), defendant was
lawfully arrested on a fugitive charge. Two deputies sheriff were
engaged in an investigation of a homicide. One had in his posses-
sion a warrant for the arrest of defendant on worthless check
charges. While they were so engaged, defendant drove up and
parked his car illegally on the sidewalk, got out of the car and
locked it. The deputy with the warrant recognized defendant and

served the warrant, placing defendant under arrest. Defendant requested permission to make a phone call. The officer allowed him to go to a nearby store for that purpose. He failed to return and the officers discovered that he had absconded. They caused the car to be towed to a storage area. Two days later they inventoried the contents, forcing open the car. They found an assortment of items which had price tags on them, indicating they had previously belonged to a sporting goods store. Much of the merchandise was in the trunk of the car. The officers testified that it was routine procedure for the sheriff's office to inventory personal property in motor vehicles in their custody, under these circumstances. The Court, in holding the procedure reasonable and the evidence admissible, pointed out the distinction between an "inventory" search and an "exploratory" search; "a valid though perhaps delicate distinction which must depend upon the totality of circumstances in each case", and said:

> "The reasonableness of any search without a warrant is measured from the standpoint of the conduct of the searchers. If their conduct is in some way reprehensible; or if they precipitate a search and are motivated therein solely by a desire to 'hunt' for incriminating evidence; or if they do so without any plausible explanation or justification; the invasion is an unreasonable one." *Id.*, 224 So. 2d at 443. *See also Urquhart v. State*, 261 So. 2d 535 (Fla. 1972).

In *Heffley v. State*, 83 Nev. 100, 423 P. 2d 666 (1967), defendant was properly arrested and his car taken to the police station. A residence had been burglarized, and among the items stolen were passports and a vehicle title and registration. Less than a month later defendant was waiting for a stop light, and an officer, responding to a radio report that a person driving a car which fitted the description of defendant's was attempting to sell guns to pawn shops, came up and began interrogating him. The officer saw a pistol sticking out from under the driver's seat, and there were several guns piled in the back seat. Defendant was arrested for possession of the pistol and taken to jail, and his car was driven by the officer. A search was made of the car, including the trunk and under the hood. On the floor by the rear seat he found two passports and two certificates of registration. The guns and these items were listed by him. Defendant contended the items linking him to the burglary were inadmissible because fruits of an

illegal search.  The Court, in holding the evidence admissible, said:

> ". . . The police officer, when there is just cause, has a duty not only to impound a car from the public highway for its own protection, but also to inventory the contents so that they may be safeguarded for the owner. Such practice is deemed necessary to defeat dishonest claims of theft of the car's contents and to protect the temporary storage bailee against false charges. *People v. Ortiz*, supra. If, however, the policing conduct indicates that the intention is exploratory rather than inventory the fruits of that search are forbidden. *People v. Garrison*, 189 Cal. App. 2d 549, 11 Cal. Rptr. 398 (1961). Unfortunately, distinguishing inventory from exploration may prove to be ambitious and unprecise. We can only say that each case must be determined upon its own facts and circumstances.
>
> The historical difference in treatment between buildings and automobiles justifies the inventory procedure used by the police. The fundamental right of privacy connected with a man's home is understandably different and in greater need of protection than an automobile on the public right of way. In the latter case the police and other people using the public highway, as well as the owner of the vehicle, have an interest which must be protected. *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.ED. 2d 828 (1961); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924)." 83 Nev. at 103-104, 423 P. 2d at 668.

*See also State v. Wallen*, 185 Neb. 44, 173 N.W. 2d 372 (1970), where defendant was arrested and jailed for drunkenness. His car was stalled outside the entrance to a military base and could not be moved on its own power. Clothing and suitcases were plainly visible. The automobile was towed to a fenced lot. The patrolman inventoried its contents, including the locked trunk which he unlocked with a key in the ignition. There he found, upon checking the contents of a vanity box, gambling paraphernalia. Gambling devices were also located in the glove compartment. The defendant was then charged with keeping gambling devices for the purpose of playing a game of chance for money. The Court held that the officer had a duty to have the car removed and a

duty to inventory the contents and, therefore, since there was no evidence that the inventory was a subterfuge for an unlawful search for evidence to convict for a crime, the evidence was admissible.

And in *City of St. Paul v. Myles*, 298 Minn. 298, 218 N.W. 2d 697 (1974), the Court upheld the conviction of defendant for illegal transportation of a firearm where the defendant's car was impounded after his arrest for assault and a traffic violation, and the officer, upon inventorying its contents, discovered an automatic pistol in the glove compartment. The Court noted that the procedure was proper and that the inventory should include not only property discovered in plain view, but all valuables within the vehicle. The Court said:

". . . We are aware that there is a potential for abuse by the police of the inventory procedure. An exploratory search for evidence may be conducted under the pretext of inventorying the contents of an impounded vehicle. We do not believe, however, that the potential danger of illegal searches conducted under the pretext of an inventory is sufficiently great to prohibit all inventories of impounded vehicles. The police will generally be able to justify an inventory when it becomes essential for them to take custody of and responsibility for a vehicle due to the incapacity or absence of the owner, driver, or any responsible passenger. In the case of an arrest, it must be shown that the arrest or arrests themselves were proper. In the present case, the police became responsible for the car when the defendant and his passengers were placed under arrest. The record does not show that these arrests were merely a pretext to enable the officers to search the car." 298 Minn. at 304-305, 218 N.W. 2d at 702.

Federal courts have also upheld the inventory procedure as not violative of the Fourth Amendment proscription against unreasonable searches and seizures. *See: U. S. v. Lipscomb*, 435 F. 2d 795 (5th Cir. 1970), *cert. den.*, 401 U.S. 980 (1971), *reh. den.*, 402 U.S. 966 (1971); *U.S. v. Pennington*, 441 F. 2d 249 (5th Cir. 1971), *cert. den.*, 404 U.S. 854 (1971); *Lowe v. Hopper*, 400 F. Supp. 970 (S.D. Ga. 1975), *aff'd per curiam*, 520 F. 2d 1405 (5th Cir. 1975); *United States v. Smith*, 340 F. Supp. 1023 (D.C. Conn. 1972);

*United States v. Fuller,* 277 F. Supp. 97 (D.C. D.C. 1967) (where drugs were found inside eye glass case located on the front seat); *United States v. Gerlach,* 350 F. Supp. 180 (E.D. Mich. 1972) (where counterfeit bills found in a box in the trunk and a wallet containing identification found beneath the front seat); *United States v. Kelehar,* 470 F. 2d 176 (5th Cir. 1972) (where counterfeit money was found under a floor mat and where officer testified he felt reasonably certain contraband would probably be discovered in the inventory process).

[1]   From these cases it appears that in order for an inventorying process not to violate the Fourth Amendment proscription against unreasonable searches and seizures, the State must show that the automobile was lawfully impounded, there being a demonstrable need for its impoundment; that the driver was not arrested as a subterfuge for searching the vehicle; that the inventory was reasonably related to its purpose which is the protection of the owner from loss, and the police or other custodian from unjust claims; that the inventory itself was reasonable and not exploratory in character; that the inventory was actually conducted under circumstances indicative of a true protective examination of the contents of the vehicle. *See State v. All,* 17 N.C App. 284, 193 S.E. 2d 770 (1973), *cert. den.,* 283 N.C. 106 (1973), U.S. *cert. den.,* 414 U.S. 866 (1973), *reh. den.,* 414 U.S. 1086 (1973).

[2]   When those principles are applied to the case *sub judice,* we cannot say that the inspection and inventory was pretextuous with an expected result so far as turning up evidence is concerned. *See Lowe v. Hopper, supra.* The defendant was lawfully arrested, and he does not contend otherwise. The arresting officer determined that it would be unsafe to leave defendant's car at that particular location because of the probability of vandalism and directed his fellow officer to begin a "vehicle inventory form" on the car in accordance with §§ 20-11 and 20-20 of the Charlotte Code. The procedure requires that

> "The inventory will be completed by viewing the contents of the interior of the vehicle (glove box, console, under the front seat, rear passenger area) for items of value. The trunk of the vehicle will also be inventoried. (If the spare tire or jack is missing, note on your inventory that these items are miss-

ing.) The inventory should contain only items of value, such as tape decks, tapes, CB radio tools, clothing, etc.

b. At no time during the inventory will any suitcases, boxes, or other sealed or locked items be opened. Enter a brief description of the item on the inventory and secure the item in the vehicle by locking it in the trunk.

c. When finished, the inventory will be signed by the officer towing the vehicle (if present) and the wrecker driver. The white copy of the vehicle inventory will be turned in with the Tow-in and Storage Report. The owner or driver will be given the pink copy, the wrecker driver will received the blue copy, and the officer will keep the yellow copy."

*After* the arresting officer had asked his fellow officer to begin the inventory, he began the search of defendant when he found the large sum of money in his sock and obtained the key to the glove compartment. Defendant told the officer that the key which was in his shoe and which he tried to throw away was to the glove compartment. When the contraband was discovered, the inventory was stopped, one officer followed the car to the police garage and the other obtained a search warrant so that the rest of the car could be searched. The good faith of the officer is readily apparent. In our opinion distinguishing inventory from exploration in this case presents no difficulty.

No error.

Judge ERWIN concurs.

Judge ARNOLD dissents.

Judge ARNOLD dissenting.

The Supreme Court of the United States has said that warrantless searches are per se unreasonable under the Fourth Amendment unless they come within a few "jealously and carefully drawn" exceptions. *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 29 L.Ed. 2d 564, 576, 91 S.Ct. 2022, 2032, *reh. den.* 404 U.S. 874, 30 L.Ed. 2d 120, 92 S.Ct. 26 (1971). The exceptions treated in *Coolidge* include (1) searches incident to a lawful arrest, (2) prob-

able cause and exigent circumstances, and (3) plain view. Other exceptions which have been found by the Supreme Court are (4) hot pursuit, *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed. 2d 782 (1967); (5) consent, *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed. 2d 854, 93 S.Ct. 2041 (1973); (6) stop and frisk, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968); and (7) inventory searches of automobiles, *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed. 2d 1000 (1976). In my opinion, the search in this case falls within none of these exceptions.

Of the seven exceptions set out above, only three could possibly apply to the fact situation before us: (1) searches incident to a lawful arrest, (2) probable cause with exigent circumstances, and (7) inventory searches. The search here exceeds the permissible scope of searches incident to a lawful arrest, however, since such searches are limited to the person and the area from within which he might have reached weapons or destructible evidence. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685 (1969). The search incident to the arrest of the defendant here took place outside the vehicle, so a search of the interior of the vehicle, and particularly the *locked* glove compartment, would not be within the area of a "Chimel" search.

Nor is this a case of probable cause with exigent circumstances. First, there is no showing of probable cause to search the vehicle. The Supreme Court has distinguished situations where such probable cause is present, *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419, *reh. den.* 400 U.S. 856, 27 L.Ed. 2d 94, 91 S.Ct. 23 (1970) (proper to search vehicle for guns and stolen money where its occupants were apprehended for robbery), from those such as *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed. 2d 777 (1964), where it is absent. In *Preston* the arrest was for vagrancy, and "it was apparent that the officers had no cause to believe that evidence of crime was concealed in the auto." *Chambers v. Maroney, supra* at 47, 90 S.Ct. at 1979, 26 L.Ed. 2d at 426. Here, as in *Preston*, the grounds for the arrest gave the officers no probable cause to search the car for evidence of crime.

Second, even if probable cause to search had existed, there is no showing of exigent circumstances sufficient to bring this case within the reasoning of *Carroll v. United States*, 267 U.S. 132, 69

L.Ed. 543, 45 S.Ct. 280 (1925), that a warrantless search is permissible "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality." *Id.* at 153, 69 L.Ed. at 551, 45 S.Ct. at 285. Here the defendant was arrested for speeding and for an outstanding traffic warrant, and was going to jail. He would have had no access to the car to destroy anything inside it during the time it would have taken the officers to obtain a search warrant. The search cannot be justified under this exception.

The majority has found that this search of defendant's automobile comes within the exception for inventory searches, but I cannot agree. In my opinion this case is not within the purview of *South Dakota v. Opperman, supra,* relied on by the majority. In *Opperman* an illegally parked, unoccupied vehicle was towed to the city impound lot, and an inventory search there revealed a bag of marijuana. The court in that case upheld routine police inventories, recognizing that they served three needs: the protection of the owner's property while it remains in police custody, the protection of the police against disputes over lost or stolen property, and the protection of the police from potential danger.

The court also noted that "there is no suggestion whatever that this standard procedure . . . was a pretext concealing an investigatory police motive." *Id.* at 376, 49 L.Ed. 2d at 1009, 96 S.Ct. at 3100. Other cases relied on by the majority reiterate this requirement that there be no investigatory motive. *E.g. People v. Andrews,* 6 Cal. App. 3d 428, 434, 85 Cal. Rptr. 908, 912 U.S. *cert. den.* 400 U.S. 908 (1970). ("[S]uch an inventory must be in 'good faith' and . . . ' "cannot be used as a subterfuge . . . , i.e. where the officers are actually engaged in the process of ferreting out evidence to be used in a criminal prosecution they cannot justify such an activity under the guise that they were making 'an inventory' . . . ." ' ") In my opinion the search in the present case contains more than a suggestion that the "inventory" was a pretext concealing an investigatory motive. Officer Christmas stopped the defendant and told him he was going to give him a citation for speeding. Officer Barnes arrived at that time, and as he testified: "I knew the Defendant before and I knew the Defendant as a known drug dealer, and I related this information to Officer Christmas. I suspected that he had drugs on his person."

State v. Phifer

*    *    *    *

Q. And you knew you all were looking for him and keeping out an eye for him and would stop him any chance you got to check him out, didn't you? Wouldn't you?

A. Yes, sir.

Q. You would have done that?

A. Yes, sir.

Q. And that's exactly why he was stopped on this day in question to be searched to see if he had any drugs on him, wasn't it?

A. I didn't stop him.

Q. Well, you would have stopped him had you seen him, wouldn't you?

A. Yes, sir. I would have.

Having learned the defendant's identity, Officer Christmas requested a radio check, and defendant was then arrested on an outstanding warrant and his car searched. This is a very different fact situation from the true inventory situation of *Opperman* and other cases relied on by the majority, where an unoccupied car, frequently illegally parked or abandoned, is taken into police custody.

The courts in the "inventory search" cases and the majority here also rely on the fact that inventories are "standard" or "routine" police procedures. Even assuming that such "standardness" makes the searches more acceptable, it is clear from the record that the officers here were not following the "Vehicle Towing & Inventory Procedure" set out by their police department:

B. Citizens should be allowed to make disposition of their vehicles when:

1. The driver or owner is on the scene.

2. In the officer's judgment the subject is capable of making such disposition.

3. Said disposition does not interfere with the case or create a traffic problem.

In the present case defendant was on the scene and there is no indication in the record that he was incapable of making disposition of the vehicle, or that disposition by the defendant would have interfered with the case or created a traffic problem. Officer Christmas, asked why he had decided to have the car towed and inventoried, cited only the "possibility of the car being stripped, possibly stolen, hubcaps stolen, vandalism to the car." This danger could have been guarded against, and the protective purposes of inventory set out by the Supreme Court served, equally well by allowing defendant the option to make disposition of the car without an inventory search.

Because this case does not fit within any of the exceptions which justify warrantless searches, I would reverse.