An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e   P r o c e d u r e .

NO. COA13-955
NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014


STATE OF NORTH CAROLINA

v.                                    Buncombe County
                                      Nos. 12 CRS 61691-92
ROBERT LEE MATHES, JR.[1]


Appeal by Defendant from Order and Judgments entered 17 April 2013 by Judge Sharon Tracey Barrett in Buncombe County Superior Court. Heard in the Court of Appeals 22 January 2014.


*Attorney General Roy Cooper, by Assistant Attorney General Carrie D. Randa, for the State.*

*Richard J. Costanza for Defendant.*


STEPHENS, Judge.

---

[1] The parties' briefs and the transcript list Defendant's last name as "Mathis." The trial court's 17 April 2013 order and judgments, however, list Defendant's last name as "Mathes." While the parties do not address this discrepancy in their briefs, the indictment indicates that Defendant is known as "Robert Lee Mathes, Jr., AKA: Robert Lee Mathis, Robert Lee Mathis, Jr[.]" Pursuant to the custom and practice of this Court, and for the sake of consistency between the courts, we use the spelling employed by the trial court in its 17 April 2013 order and judgments.

*Procedural History and Evidence*

On 11 October 2012, Defendant Robert Lee Mathes, Jr., was arrested and charged with driving while impaired, driving while license revoked, and hit and run causing property damage. On 5 November 2012, Defendant was indicted for habitual impaired driving in lieu of the original impaired driving charge because he had three or more convictions for driving while impaired in the ten years directly preceding the current charge. Defendant filed a motion to suppress statements and tangible evidence on 15 April 2013, and a hearing on that motion was conducted the same day. The evidence presented at the hearing tended to show the following:

Officer Roger Patton of the Black Mountain Police Department ("BMPD") responded on 11 October 2012 to a dispatch concerning a wreck on North Blue Ridge Road in Buncombe County. The driver of the truck, who was reportedly wearing tan shorts and a blue jean jacket, left the scene of the accident and was walking north on North Blue Ridge Road. When Officer Patton arrived at the scene, he pulled into a retirement complex and discovered an unoccupied Chevrolet pickup truck blocking both lanes of North Blue Ridge Road with the front end in a ditch. The truck had sustained extensive damage. Witnesses at the scene

indicated that the driver of the truck had gone up the road and was wearing a plaid jacket and tan shorts.

Officer Patton drove from the parking lot of the retirement complex onto Old United States Highway 70. Four to five minutes later and approximately 200 to 250 yards away from the accident, Officer Patton spotted a person, later identified as Defendant, walking along the road. Defendant was wearing a plaid jacket and tan-colored shorts, but no shoes. Officer Patton got out of his car and told Defendant that he was investigating an accident on North Blue Ridge Road. When Officer Patton asked Defendant if he knew anything about the accident, Defendant indicated that he did not. According to Officer Patton, Defendant looked intoxicated and appeared to have urinated on himself. His eyes were bloodshot and glassy, there was a dark stain on his pants, he smelled of alcohol and urine, and he had slurred speech.

Officer Patton "asked [Defendant] if he would go back to the scene with me, so I patted him down, . . . just an outer pat-down *Terry* frisk of his outer clothing for weapons. Found none." (Italics added). During the frisk Officer Patton felt a set of keys in Defendant's right front pocket, but did not remove them. On cross-examination, defense counsel asked Officer Patton to elaborate on the frisk:

[DEFENSE COUNSEL:] But you also testified that you were continuing in your investigation to determine who was actually operating the vehicle; right?

[OFFICER PATTON:] Right.

[DEFENSE COUNSEL:] So you placed him in handcuffs and then you patted him down?

[OFFICER PATTON:] No, sir. He was patted down for a *Terry* frisk [based on] officer safety prior to being put into cuffs. He was not put into cuffs until I had determined that we needed to go back to the scene and he was going to be going in my car.

[DEFENSE COUNSEL:] All right. So you performed a *Terry* frisk. And what did you discover from the *Terry* frisk?

[OFFICER PATTON:] No weapons.

[DEFENSE COUNSEL:] Now, you mentioned this set of keys in response to the direct questions. Did you find the set of keys as part of the *Terry* frisk?

[OFFICER PATTON:] I felt a set of keys in his pocket, yes.

[DEFENSE COUNSEL:] But you did not take them out?

[OFFICER PATTON:] No, sir.

[DEFENSE COUNSEL:] So when you felt them, they were immediately apparent to you as a set of keys?

[OFFICER PATTON:] Yes.

(Italics added). Officer Patton testified on redirect that he placed Defendant in handcuffs out of concern for officer safety.

When Officer Patton and Defendant returned to the scene of the accident, two unidentified witnesses told Officer Patton that Defendant was the person they saw get out of the truck. Officer Patton then determined that (1) the truck did not belong to Defendant and (2) Defendant's driver's license was revoked. At that point, Officer Patton placed Defendant under arrest for driving while impaired and driving while license revoked.

During the arrest Officer Patton again searched Defendant and, at that point, removed the keys from his pocket. Defendant indicated that none of the keys would fit in the truck's ignition. Nonetheless, Officer Patton entered the truck, inserted one of the keys, and "turned the switch over and turned it back off." Officer Patton did not attempt to start the engine. Pursuant to BMPD policy, Officer Patton then left the keys with the vehicle for transportation by the towing company. Afterward, he took Defendant to the Buncombe County Detention Facility.

Another police officer, Officer Christopher Staton, traveled with Officer Patton and Defendant to the facility. During the ride, Defendant made several comments that the keys

would fit in any Chevrolet vehicle. Upon arrival, Officer Staton read Defendant his *Miranda* rights for the first time. Defendant waived those rights, declined to submit to a chemical analysis of his breath, and refused to answer more than three questions about the incident. Defendant also continued to deny having driven the truck.

At the suppression hearing, Defendant moved the trial court to suppress any evidence obtained "as the fruit of the . . . illegal . . . search of Defendant's person." The trial court orally denied Defendant's motion and memorialized that denial by written order entered 17 April 2013. In its written order, the court also made the following pertinent findings of fact and conclusions of law:

> . . . FINDINGS OF FACT:
>
> . . . .
>
> 12. [BMPD] policy required that keys to any vehicle that requires towing should be left at the scene of the wreck. As a result . . . , Officer Patton obtained the keys from . . . Defendant and tried them in the vehicle's ignition. The keys did work in the ignition. So the keys were left at the accident scene to be given to the tow truck driver.
>
> . . . .
>
> . . . CONCLUSIONS OF LAW:

. . . .

3. . . . Officer Patton had reasonable grounds to conduct an investigatory stop of . . . Defendant as a pedestrian, to conduct a protective pat[ ]down for officer safety, and to transport . . . Defendant from the road[]side to the wreck scene in his police vehicle.

4. . . . [Officer Patton] had probable cause to arrest . . . Defendant and charge[] him with [d]riving [w]hile [i]mpaired, [d]riving [w]hile [l]icense [r]evoked and[, h]it and [r]un [f]ailure to [s]top after a motor vehicle accident involving property damage.

Defendant's trial began immediately after the court's oral denial of his motion to suppress. At the close of the State's case and the close of all of the evidence, Defendant moved to dismiss the charges against him. The trial court denied that motion, and Defendant was convicted of driving while impaired, driving while license revoked, and hit and run causing property damage. Because Defendant stipulated to having three convictions of driving while impaired in the previous ten years, he received a sentence for habitual impaired driving, a class F felony. Defendant was sentenced to concurrent terms of 23 to 37 months in prison for habitual impaired driving and 120 days in prison for hit and run and driving while license revoked. Defendant gave notice of appeal in open court.

*Standards of Review*

Our review of the trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon [the] defendant's motion for dismissal, the question for the [appellate c]ourt is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation omitted), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

## *Discussion*

On appeal, Defendant argues that the trial court erred in denying his motions to suppress and dismiss. Defendant contends

that the trial court erred in denying his motion to suppress because Officer Patton did not have the authority to (1) perform a pat down when he first encountered Defendant or (2) seize Defendant's keys during the arrest. Defendant argues that the trial court erred in denying his motion to dismiss because the State did not present substantial evidence that he was the operator or driver of the truck. We find no prejudicial error.

*I. Defendant's Motion to Suppress*

> The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. U.S. Const. Amend. IV. This prohibition applies to the states through the Due Process Clause of the Fourteenth Amendment. Article I, Section 20 of the North Carolina Constitution similarly prohibits unreasonable searches and seizures. There are generally two types of "seizures" under the Fourth Amendment: (1) arrests and (2) investigatory stops. [In order to be reasonable under the Fourth Amendment, an a]rrest[] require[s] that the arresting officer have "probable cause," whereas investigatory stops do not.

*State v. Thorpe*, __ N.C. App. __, __, 754 S.E.2d 213, 220-21 (2014) (certain citations and internal quotation marks omitted).

*A. The First Search*

Defendant does not dispute the trial court's findings of fact. Therefore, they are binding on appeal. *State v. Taylor*, 178 N.C. App. 395, 401, 632 S.E.2d 218, 223 (2006). Furthermore,

Defendant states outright that he "does not contest Officer Patton's right to stop [him]." Instead, Defendant argues that Officer Patton did not have authority for the first search. We agree.

> Under the standard first laid out in *Terry v. Ohio*, 392 U.S. 1, . . . 20 L. Ed. 2d 889 (1968), officers temporarily detaining someone for investigatory purposes only require reasonable suspicion of criminal activity. . . . The officer's reasonable suspicion must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by the officer's experience and training. In reviewing the validity of a *Terry* stop, the [c]ourt must consider the totality of the circumstances.

*Thorpe*, __ N.C. App. at __, 754 S.E.2d at 221 (certain citations, internal quotation marks, and brackets omitted). "[T]he characteristics of the investigatory stop, including its length, the methods used, and any search performed, should be the least intrusive means reasonably available to effectuate the purpose of the stop." *Id.* (citation and internal quotation marks omitted).

> [W]hen a police officer observes unusual behavior which leads him to conclude, in light of his experience, that criminal activity may be occurring and that the person may be armed and dangerous, the officer is permitted [under *Terry*] to conduct a pat-down search to determine

> whether the person is carrying a weapon. . . .
>
> The purpose of the officer's frisk or pat[ ]down is for the officer's safety; as such, the pat[ ]down is limited to the person's outer clothing and to the search for weapons that may be used against the officer. If during a limited weapons search, contraband or evidence of a crime is of necessity exposed, the officer is not required by the Fourth Amendment to disregard such contraband or evidence of crime. Evidence of contraband, plainly felt during a pat[ ]down or frisk, may be admissible, provided the officer had probable cause to believe that the item was in fact contraband.
>
> Under the "plain feel" doctrine if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons.

*State v. Robinson*, 189 N.C. App. 454, 458–59, 658 S.E.2d 501, 504–05 (2008) (citations, certain internal quotation marks, brackets, and ellipsis omitted). An officer's conclusion that a suspect may be armed and dangerous is sufficient to justify a protective pat-down frisk when it is based on reasonable suspicion. *State v. Carrouthers*, 200 N.C. App. 415, 419, 683 S.E.2d 781, 784 (2009) (citation omitted).

When Officer Patton first encountered Defendant, Defendant was walking barefoot along Highway 70 near North Blue Ridge Road, wearing a plaid jacket and tan shorts. Officer Patton did not observe anything resembling a weapon on Defendant's person or testify that he noticed *any circumstances* suggesting that Defendant was armed and dangerous. He did not state that Defendant was walking along a particularly dangerous part of Highway 70 or that Defendant had acted in a way to suggest that he was armed. He did not describe any movements that Defendant made which might have indicated Defendant was reaching for something on his person and, thereby, creating reasonable concern that Defendant was reaching for a weapon. Indeed, it appears from the transcript that Defendant was entirely cooperative, if not sober. The only rationale that Officer Patton provided for his decision to frisk Defendant is the following: "I asked [Defendant] if he would go back to the scene with me, *so I patted him down*, done [sic] just an outer pat-down *Terry* frisk of his outer clothing for weapons." (Emphasis and italics added). This explanation does not even suggest, much less establish, the kind of unusual behavior sufficient to justify a reasonable belief that the suspect is armed and dangerous.

A suspect's decision to accede to an officer's request to return to the scene of the crime does not, in and of itself, justify a *Terry* frisk. *See State v. Rhyne*, 124 N.C. App. 84, 91, 478 S.E.2d 789, 792-93 (1996) (holding that the officer did not have reasonable suspicion to justify a *Terry* frisk of the defendant when the officer received an anonymous tip that several men were dealing drugs in a breezeway and the defendant, who was sitting in the breezeway, complied with the officer's request for identification, but refused the search). It does not indicate that the suspect is armed and dangerous or that the officer's safety is in jeopardy. *See id.* If anything, such behavior implies that the suspect is compliant and, thus, *not dangerous*. *See id.* (noting that the defendant did not flee when approached by the officer and, "[o]ther than being nervous, [the defendant] exhibited no other behavior that would indicate that he was engaged in criminal activity"). In addition, an officer's plain statement that he conducted a pat down solely for the purpose of ensuring that no weapons were present does not, in and of itself, establish reasonable suspicion that the suspect was armed and dangerous. There must be *some* external facts giving rise to a reasonable concern for the presence of a

weapon, none of which were present here.[2] *See id.; cf. State v. Beveridge*, 112 N.C. App. 688, 696, 436 S.E.2d 912, 916 (1993) (holding that the officer was not justified in continuing a search of the defendant after concluding that the defendant was not armed because it was "unrelated to the sole justification for the search . . . the protection of the police officer and others nearby") (citation omitted), *affirmed per curiam*, 336 N.C. 601, 444 S.E.2d 223 (1994).

Nonetheless, this initial search did not yield any evidence other than the fact that Defendant had keys in his pocket. As many innocent people carry keys in their pockets, this fact did not help the State's case at trial. Officer Patton had already decided to take Defendant back with him to the crime scene, and Defendant did not make any additional statements directly related to the first search. Therefore, the trial court's error

---

[2] The only case law cited by the State for the contrary assertion is authority from the Fourth Circuit, which is not controlling, where the court concluded that the officer had authority for a *Terry* stop and frisk when he was investigating a theft that had just occurred, the suspects matched the description of the individuals involved in the crime, and the "suspects behaved nervously and in a threatening manner upon being approached and addressed." *United States v. Swann*, 149 F.3d 271, 274 (1998). Even though this case is not binding on this Court, we note that it is entirely distinguishable given the fact that the defendant in that case acted in a "threatening manner" upon being approached. *Id.*

in failing to suppress this evidence was not prejudicial and does not warrant reversal.

## B. The Second Search

Defendant also argues that the trial court erred by concluding that the seizure of his keys, following the second search, was appropriate under BMPD's towing policy. In response, the State contends that the seizure of the keys was instead appropriate in conjunction with a valid search incident to arrest. We agree.

### i. BMPD's Towing Policy

Officer Patton testified that he seized the keys during the arrest of Defendant. At the suppression hearing, the prosecution argued that this seizure was proper because Officer Patton "needed to leave those keys with the tow truck to make sure that those were the keys in order for the tow truck driver to be able to get it on the tow truck." In its order, the trial court made only one finding of fact related to the seizure of Defendant's keys, determining that Officer Patton obtained them "[a]s a result of" the BMPD policy requiring "that keys to any vehicle that requires towing should be left at the scene of the wreck." This the Fourth Amendment does not permit.

Whatever the practical application of BMPD's towing policy,

it had no bearing on the validity of Officer's Patton's search of *Defendant's person* or the seizure of Defendant's keys from his pocket. While that policy might have served to justify a *search of the truck* and seizure of keys located in the truck under the inventory search exception to the Fourth Amendment, it did not provide authority for Officer Patton's decision to search Defendant's person and seize the keys in his pocket. *Cf. South Dakota v. Opperman*, 428 U.S. 364, 373, 49 L. Ed. 2d 1000, 1007-08 (1976) (holding that the police officers did not violate the Fourth Amendment by performing a search of *the defendant's lawfully impounded car* on grounds that "[i]t would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it"); *see generally State v. Phifer*, 39 N.C. App. 278, 288, 250 S.E.2d 309, 315, *affirmed*, 297 N.C. 216, 254 S.E.2d 586 (1979) ("[I]n order for an inventorying process not to violate the Fourth Amendment proscription against unreasonable searches and seizures, the State must show that the automobile was lawfully impounded, there being a demonstrable need for its impoundment; that the driver was not arrested as a subterfuge for searching the vehicle; that the inventory was reasonably related to its

purpose which is the protection of the owner from loss, and the police or other custodian from unjust claims; that the inventory itself was reasonable and not exploratory in character; [and] that the inventory was actually conducted under circumstances indicative of a true protective *examination of the contents of vehicle*.") (emphasis added). To the extent BMPD's towing policy could be applicable in this case, it would be limited to a search of *Defendant's truck*, not his person. *See Opperman*, 428 U.S. at 369, 49 L. Ed. 2d at 1007-08. Accordingly, we hold that the trial court erred by determining that seizure of the keys *from Defendant's person* was justified under BMPD's towing policy.

### *ii. The State's New Argument*

Despite the prosecutor's misguided argument at the suppression hearing and the trial court's obviously flawed order, the State now argues that seizure of the keys was appropriate in conjunction with a search incident to Defendant's arrest. In response, Defendant asserts that "this Court should reject [that] theor[y] of admissibility" on grounds that the State did not raise it during the suppression hearing, citing case law that the parties are not permitted to raise a new legal theory for the first time on appeal. We disagree.

Well-settled case law in this State makes it clear that "[a] *correct* decision of a lower court [on a motion to suppress] *will not be disturbed on review* simply because an insufficient or superfluous reason is assigned." *State v. Austin*, 320 N.C. 276, 290, 357 S.E.2d 641, 650 (1987) (emphasis added). Whether the trial court's reasoning for denying the defendant's motion is correct or — as is obviously the case here — incorrect, "we are not required on this basis alone to determine that the ruling was erroneous." *Id.* (citation omitted). "The [only relevant] question for review is whether the ruling of the trial court was *correct* and not whether the reason given therefor is sound or tenable. The crucial inquiry for [the appellate c]ourt is *admissibility and whether the ultimate ruling was supported by the evidence*." *Id.* (citation omitted; emphasis added); *see also State v. Bone*, 354 N.C. 1, 8, 550 S.E.2d 482, 486 (2001) ("We additionally conclude that further grounds, not articulated by the trial court, also justify the seizure."). Therefore, the State's inexplicable failure to raise the search incident to arrest doctrine at the hearing is not sufficient reason for this Court to decline to consider the possibility that the trial court's order might be correct under some other doctrine. We hold that it is.

### iii. Search Incident to Arrest

"An officer may conduct a warrantless search incident to a lawful arrest. A search is considered incident to arrest even if conducted prior to formal arrest if probable cause to arrest exists prior to the search and the evidence seized is not necessary to establish that probable cause." *State v. Chadwick*, 149 N.C. App. 200, 205, 560 S.E.2d 207, 211 (citations and internal quotation marks omitted), *disc. review denied*, 355 N.C. 752, 565 S.E.2d 672 (2002). A warrantless arrest by a police officer is lawful if the officer has "probable cause to believe [the suspect] has committed a felony." *Id.* at 204, 560 S.E.2d at 210 (citations omitted). If the police officer has probable cause to believe that the suspect has committed a misdemeanor, a warrantless arrest is generally unlawful unless the misdemeanor is committed in the officer's presence or some other exception applies. *See State v. McCloud*, 276 N.C. 518, 526, 173 S.E.2d 753, 759 (1970). Section 15A-401 of the North Carolina General Statutes describes those exceptions as follows:

> (2) *Offense Out of Presence of Officer.* — An officer may arrest without a warrant any person who the officer has probable cause to believe:
>
> a. Has committed a felony; or
>
> b. Has committed a misdemeanor, and:

  1. Will not be apprehended unless immediately arrested, or

  2. May cause physical injury to himself or others, or damage to property unless immediately arrested; or

c. Has committed a misdemeanor under G.S. 14-72.1, 14-134.3, 20-138.1, or 20-138.2; or

d. Has committed a misdemeanor under G.S. 14-33(a), 14-33(c)(1), 14-33(c)(2), or 14-34 when the offense was committed by a person with whom the alleged victim has a personal relationship as defined by G.S. 50B-1; or

e. Has committed a misdemeanor under G.S. 50B-4.1(a); or

f. Has violated a pretrial release order entered under G.S. 15A-534 or G.S. 15A-534.1(a)(2).

N.C. Gen. Stat. § 15A-401(b)(2) (2013).

In this case, Officer Patton stated at the hearing that he arrested Defendant "for [driving while impaired and] driving while license revoked." Later that day Defendant was charged with operating a vehicle in a public vehicular area: "[w]hile subject to an impairing substance" under section 20-138.1, "[w]hile the defendant's drivers license was revoked" under section 20-28, and in violation of section 20-166(c) for failing to stop. Each of these crimes is punishable as a misdemeanor and, on that basis, would not generally be sufficient to justify

an arrest when committed outside the officer's presence, as here. *See* N.C. Gen. Stat. §§ 20-28, -138.1, -166 (2013). Because section 15A-401(b)(2)(c) provides an exception to this rule for suspected violations of section 20-138.1, however, Defendant's arrest for driving while impaired was lawful as long as Officer Patton had probable cause to believe that Defendant was, in fact, driving while impaired. We hold that he did.

Officer Patton responded to a dispatch that an individual wearing a blue jean jacket and tan shorts had been involved in an accident. Witnesses at the scene informed Officer Patton that the driver was wearing a plaid jacket with tan shorts and directed Officer Patton up the road, where he discovered Defendant. Defendant was wearing a plaid shirt and tan shorts, looked intoxicated, had bloodshot and glassy eyes, exhibited slurred speech, smelled of alcohol, and had a urine stain on his pants. When Officer Patton brought Defendant back to the scene of the accident, witnesses unequivocally identified Defendant as the man who was driving the truck when it wrecked. At that point, Officer Patton certainly had probable cause to believe that Defendant had been driving the truck and had been doing so while subject to an impairing substance in violation of section 20-138.1. *See* N.C. Gen. Stat. § 138.1. Therefore it was lawful

for Officer Patton to arrest Defendant and, incident to that lawful arrest, to conduct a search of Defendant's person.

Despite the State's complete failure to make this point at the hearing and the trial court's improper reliance on the State's misguided towing argument, the trial court reached the right result — the denial of Defendant's motion to suppress. Accordingly, we will not disturb the court's order on appeal. Defendant's argument is overruled.

*II. Defendant's Motion to Dismiss*

Lastly, Defendant argues that the trial court erred in denying his motion to dismiss because each of the charged offenses required proof that Defendant was operating or driving the truck and the State did not present substantial evidence that this occurred. We disagree.

None of the bystanders from the scene of the accident offered testimony at trial. Nonetheless, Officer Patton testified that the keys lawfully seized from Defendant fit into the truck's ignition and turned. This testimony, alone, is sufficient to constitute substantial evidence that Defendant was the driver of the truck. Accordingly, Defendant's final argument is overruled, and we hold that the trial court properly denied Defendant's motion to dismiss.

NO PREJUDICIAL ERROR.

Judges STEELMAN and DAVIS concur.

Report per Rule 30(e).